# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

| | |
|---|---|
| **DANIEL DANFORD** and **HARRY HOUTMAN**, individually and on behalf of all other similarly situated individuals,<br><br>        Plaintiffs,<br><br>v.<br><br>**LOWE'S COMPANIES, INC**. and **LOWE'S HOME CENTERS, LLC**,<br><br>        Defendants. | Case No.:<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiffs DANIEL DANFORD and HARRY HOUTMAN ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendants LOWE'S COMPANIES, INC. and LOWE'S HOME CENTERS, LLC ("Defendants"), and state as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, among other laws.

1

2. Defendants are an American retail company specializing in home improvement. Headquartered in Mooresville, North Carolina, Defendants operate a chain of retail stores in the United States, Canada, and Mexico. As of February 2018, Defendants and their related businesses operate more than 2,390 home improvement and hardware stores and employ over 310,000 people in North America.

3. In order to effectively operate their chain of retail stores, Defendants employ non-exempt hourly managers, including Department Managers, Service Managers and Support Managers (hereinafter collectively referred to as "Hourly Managers"), to supervise and oversee the retail stores, or various departments within the retail stores, and to manage the retail stores' employees.

4. Defendants require their Hourly Managers to work a full-time schedule, plus overtime. However, Defendants do not compensate their Hourly Managers for all hours worked; instead, Defendants require their Hourly Managers to perform compensable work tasks before and after their scheduled shifts and during their unpaid meal periods, when they are not clocked into Defendants' timekeeping system. These policies result in Hourly Managers not being paid for all time worked, including overtime.

5. More specifically, Defendants maintain and have maintained a policy and practice of failing to pay Plaintiffs and Hourly Managers for time spent reading and responding to work-related smartphone communications during non-work

hours, including during unpaid meal periods, or for being required to report early for work to perform a pre-shift "sweep" of the premises by slowly driving their vehicles around the outer perimeter of the retail store to ensure that nothing out of the ordinary has occurred overnight. Plaintiffs and Hourly Managers perform other pre- and post-shift work tasks that go uncompensated, such as unlocking and locking the main entrance, arming and disarming the alarm system, and logging into and out of Defendants' computer system. Plaintiffs and Hourly Managers spend significant time performing this off-the-clock work, but Defendants do not compensate them for it. Because much of this time qualifies as overtime within the meaning of applicable federal and state laws, Plaintiffs and Hourly Managers are owed overtime pay for this uncompensated, off-the-clock work.

6.     The individuals Plaintiffs seek to represent in this action are current and former Hourly Managers who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendants' violations of federal and state law.

7.     Defendants knew or could have easily determined how long it takes Hourly Managers to complete their off-the-clock work, and Defendants could have properly compensated Plaintiffs and the putative Collective and Class for this work, but deliberately chose not to.

8.     Plaintiffs seek a declaration that their rights, and the rights of the

3

putative Collective and Class, were violated, an award of unpaid wages and liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

## JURISDICTION

9. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

10. Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

11. Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed Class have a different citizenship than Defendants.

12. Defendants' annual sales exceed $500,000 and Defendants have more

4

than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendants' employees engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

13.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

14.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

15.     The Court has personal jurisdiction over Defendants because Defendants are headquartered in the state of North Carolina, conduct business within the state of North Carolina, employ individuals within the state of North Carolina, and are registered with the North Carolina Secretary of State.

16.     Personal jurisdiction also applies to Defendants because Defendants have purposefully availed themselves of the privilege of conducting activities in the state of North Carolina and have established minimum contacts sufficient to confer jurisdiction over them; and the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

5

## VENUE

17.     Venue is proper in the Western District of North Carolina because Defendant Lowe's Companies, Inc. is headquartered in Iredell County, North Carolina. Therefore, a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in the Western District of North Carolina.

## INTRADISTRICT ASSIGNMENT

18.     A substantial part of the events or omissions giving rise to the claims alleged herein occurred in Iredell County, North Carolina; therefore, this action is properly assigned to the Statesville Division.

## PARTIES

19.     Plaintiff DANIEL DANFORD ("Plaintiff Danford") is a North Carolina resident who worked for Defendants as an hourly Department Manager and Service Manager at their Raleigh, North Carolina retail store at 4601 Capital Boulevard from March 2011 until October 2018. Defendants compensated Plaintiff Danford through the payment of an hourly wage of approximately $20.00 per hour. Plaintiff Danford signed a consent form to join this collective action lawsuit, attached hereto as Exh. A.

20.     Plaintiff HARRY HOUTMAN ("Plaintiff Houtman") is a North Carolina resident who worked for Defendants as an hourly Department Manager,

Service Manager, and Support Manager at their Raleigh, North Carolina retail store at 4601 Capital Boulevard from September 2006 until March 2019. Defendants compensated Plaintiff Houtman through the payment of an hourly wage, most recently at the rate of $25.97 per hour. (Exh. B, Houtman Pay Stub.) Plaintiff Houtman signed a consent form to join this collective action lawsuit, attached hereto as Exh. C.

21. Defendant LOWE'S COMPANIES, INC. is a North Carolina corporation (SosId: 0087443) with a Principal Office at 1000 Lowe's Blvd, Mooresville, North Carolina 28117-8520. Defendant Lowe's Companies, Inc.'s Registered Agent for service of process is Corporation Service Company.

22. According to Defendant Lowe's Companies, Inc.'s website,

From its start as a small-town hardware store in North Carolina in 1946, Lowe's has grown to become the nation's second largest home improvement retailer. Today, Lowe's is the 8th largest retailer in the United States with more than 2,370 retail locations and over 290,000 employees. In 2007, Lowe's opened its first location in Canada followed by Mexico in 2010, giving Lowe's its international presence. And although Lowe's has changed over the years, our commitment to offer quality products at the lowest prices with exceptional customer service – remains the same. Our continued success depends upon maintaining these traditions, Lowe's is an active participant in the communities we serve and we offer employees an engaging workplace, competitive benefits and rewarding career.

See https://jobs.lowes.com/about-us/ (last visited on March 21, 2019).

23. Defendant LOWE'S HOME CENTERS, LLC is a North Carolina limited liability Company (SosId: 0087619) with a Principal Office at 1605 Curtis

Bridge Rd, Wilkesboro, North Carolina 28697-2231. Defendant Lowe's Home Centers, LLC's Registered Agent for service of process is Corporation Service Company.

24.     According to business news website Bloomberg.com,

> Lowe's Home Centers, LLC operates home improvement stores. It retails appliances, tools, paints, lumber, and nursery products. … Lowe's Home Centers, LLC was formerly known as Lowe's Investment Corporation. The company was incorporated in 1958 and is based in Mooresville, North Carolina. Lowe's Home Centers, LLC operates as a subsidiary of Lowe's Companies Inc.

*See*

*https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=415 8296* (last visited on March 21, 2019).

25.     Upon information and belief, Defendants have employed hundreds of Hourly Managers—including Plaintiffs—in the last three years to perform services that include supervising and overseeing the retail stores, or various departments within the retail stores, and managing the retail stores' employees.

## <u>GENERAL ALLEGATIONS</u>

26.     Defendants employed Plaintiffs as Hourly Managers in the state of North Carolina within the last three years. In that position, Plaintiffs were compensated pursuant to an hourly wage and typically worked a rotating schedule consisting of five to six days and up to 40 or more hours each week, resulting in overtime hours on a weekly basis.

8

27.    Throughout their employment with Defendants, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their jobs as Hourly Managers.

28.    Defendants' Department Managers are responsible for, among other things: (a) opening and closing the retail store; (b) leading and enabling a team of associates to deliver the best possible customer experience in the store by coaching and training associates, managing performance, and ensuring adequate department coverage at all times; (c) assuming responsibility for both customer facing activities (e.g., greeting customers, clarifying needs and identifying solutions, and closing sales) and non-facing activities (e.g., down stocking, inventory management, and area recovery); (d) ensuring his/her area of the store is in-stock and customer ready at all times while inspiring engaging, customer-focused behavior and driving his/her team to achieve sales and margin goals; (e) keeping management informed, delegating and following-up on daily tasks, and maintaining a clean, safe and secure work environment; (f) supervising associates in his/her own area; (g) leading associates in other departments, as needed, to meet the demands of the store, which requires broad product knowledge and the ability to engage associates and customers across departments; (h) at times, serving as manager-on-duty (MOD); and (i) moving large, bulky and/or heavy merchandise and performing tasks that may require prolonged standing, sitting, and other activities necessary to perform job duties.

9

29.     Defendants' Service Managers are responsible for, among other things: (a) opening and closing the retail store; (b) enabling and empowering a team of Customer Service Associates (CSAs) to deliver the best possible customer service experience in the store by assuming responsibility for customer facing activities on the sales floor (e.g., greeting customers, listening and probing to understand needs, and identifying solutions), as well as non-customer facing activities (e.g., down stocking, inventory management and area recovery); (c) ensuring department(s) are customer ready at all times while inspiring engaging, customer-focused behavior, mitigating and reducing customer complaints, and driving positive first impressions for customers upon entering the store; (d) coaching, mentoring, training, and continually monitoring CSAs in their assigned areas; (e) leading CSAs in other departments, as needed, to meet the demands of the store, which requires broad product knowledge and the ability to engage employees and customers across departments; and (f) moving large, bulky and/or heavy merchandise and performing tasks that may require prolonged standing, sitting, and other activities necessary to perform job duties.

30.     Defendants' Support Managers are responsible for, among other things: (a) opening and closing the retail store; (b) planning, scheduling, monitoring, and successfully implementing all non-selling operations in the front-end of the store (i.e., cashier and administrative functions); (c) facilitating the store's ability to

provide a superior customer shopping experience and maximize sales and profitability by overseeing the Administrative office, researching shortages or overages, depositing cash in the bank, handling register pulls and loans, managing exchange and loaner accounts, and monitoring Customer Service desk activity; (d) planning, scheduling, monitoring, and successfully implementing all non-selling operations in the back-end of the store (during the overnight shift or the Night Ops role); (e) leading a team responsible for critical support processes including receiving and stocking inventory, assembling product, and delivery; (f) training associates, managing performance, and creating schedules for the team to ensure adequate department coverage at all times; (g) collaborating and communicating with peers on the leadership team to ensure that critical information is being shared and to determine the most effective methods for meeting service objectives and customer needs; and (h) moving large, bulky and/or heavy merchandise and performing tasks that may require prolonged standing, sitting, and other activities necessary to perform job duties.

31. Defendants require their Hourly Managers to clock in/out for their shifts but do not accurately record the Hourly Managers' compensable work time as required by law. Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

32.     Defendants use the computer software program "Kronos" to track Hourly Managers' hours worked for purposes of compensation.

33.     However, because Defendants fail to accurately record their Hourly Managers' work time, Defendants' compensation system fails to properly account for and compensate Hourly Managers for all time worked, including their overtime hours, during each day and during each workweek.

34.     The hours reflected on the Hourly Managers' paystubs are not accurate, are contrived by Defendants, and have no relation to the hours the Hourly Managers actually worked for Defendants.

35.     This is because Defendants require their Hourly Managers to perform compensable work tasks before and after their shifts and during their unpaid meal periods, when they are not clocked into Defendants' timekeeping system.

36.     As a result of Defendants' compensation policy, Plaintiffs and all other Hourly Managers are deprived of pay for compensable time worked, including overtime.

A.     **Pre-Shift Off-the-Clock Work**

37.     Plaintiffs and the Hourly Managers work a rotating schedule requiring them to work five to six days per week and tasking them with the responsibility of opening the retail store multiple times per week.

38.     Pursuant to Defendants' policies, training and direction, Hourly

Managers responsible for opening the retail store are required to perform a series of essential work tasks *before* their scheduled shift and *before* clocking into Defendants' time and attendance software. These pre-shift work activities take substantial time on a daily basis, ranging from 10 to 15 minutes per shift, or even longer. Before each shift and before clocking in, Hourly Managers responsible for opening the retail store must undertake the following essential work tasks:

- Immediately upon arriving at the retail store, the Hourly Manager must perform a pre-shift "sweep" of the premises by slowly driving their vehicle around the outer perimeter of the retail store to ensure that nothing out of the ordinary has occurred overnight (such as burglary, vandalism, weather-related damage, or anything else that could pose a safety hazard to employees or customers). If the Hourly Manager spots anything out of the ordinary, they must exit their vehicle to investigate, and, if necessary, extinguish, remove or otherwise eliminate the safety hazard.

- After performing a "sweep" of the retail store's premises, the Hourly Manager must park their vehicle, walk to the main entrance of the retail store, and unlock the entrance using a key.

- After unlocking the main entrance, the Hourly Manager must walk to the alarm system and disarm the alarm by punching in a passcode (the Hourly Manager has one minute to disarm the alarm system before the alarm goes off).

- After disarming the alarm system, the Hourly Manager must walk back to the main entrance to let in any other employees who have arrived for the morning shift so that they can get into the store, stow their personal belongings, and clock in on time.

- Finally, the Hourly Manager must walk to Defendants' desktop computer, turn on/wake up the computer, open Google Chrome or Internet Explorer by clicking the Google Chrome or Internet Explorer icon, search for and log into the Kronos time and attendance software

13

using a username and password, and click "Start Shift."

39.     The Hourly Managers are not compensated for this time because Defendants train and instruct the Hourly Managers to perform the above-described work activities *before* clocking into the Kronos time and attendance software.

40.     From the time that the Hourly Managers arrive to work and start performing the pre-shift "sweep" of the premises until the time that they clock into Defendants' Kronos time and attendance software takes substantial time on a daily basis, ranging from 10 to 15 minutes per shift, or even longer if the Hourly Manager had to exit his or her vehicle to investigate or resolve a safety hazard, meaning that the Hourly Manager who opens the retail store performs a minimum of 10 to 15 minutes of off-the-clock work without compensation.

41.     The unpaid off-the-clock work performed by Plaintiffs and all other Hourly Managers before their shifts directly benefits Defendants, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Hourly Managers.

**B.     Meal-Period Off-the-Clock Work**

42.     Defendants promise their Hourly Managers one unpaid 60-minute meal period each shift.

43.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or

her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>*completely relieved*</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

44.    Defendants do not provide Hourly Managers with bona fide meal periods because they require the Hourly Managers to read and respond to work-related smartphone communications during their unpaid meal breaks.

45.    The work performed by Hourly Managers during their unpaid meal breaks takes substantial time on a daily basis, in the range of 5 minutes per shift or more, but Hourly Managers are not paid for this time.

### C.    Post-Shift Off-the-Clock Work

46.    Plaintiffs and the Hourly Managers work a rotating schedule requiring them to work five to six days per week and tasking them with the responsibility of closing the retail store multiple times per week. For security reasons, Hourly Managers typically close the retail store in pairs, as it is rare for Hourly Managers to close the store alone.

47.    Pursuant to Defendants' policies, training and direction, Hourly Managers responsible for closing the retail store are required to perform a series of

essential work tasks *after* their scheduled shift and *after* clocking out of Defendants' time and attendance software. After each shift and after clocking out, Hourly Managers responsible for closing the retail store must walk to the alarm system and arm the alarm by punching in a passcode. Then, the Hourly Managers must walk to the main entrance, and, subsequent to exiting the store, close the main entrance, lock it using a key, and ensure that the main entrance is securely locked. This post-shift process takes substantial time on a daily basis, in the range of 2 to 3 minutes per shift, but can take upwards of 10 to 15 minutes or more if the Hourly Managers encounter security issues while attempting to arm the alarm system.

48.     Oftentimes, when attempting to arm the alarm system, the system will display a warning or error message alerting the Hourly Managers of a security issue, such as a partially open or unlocked door, that needs to be resolved before the system can be properly armed. The Hourly Managers must then walk to the area of the store that is the source of the security issue, resolve the issue, walk back to the main entrance where the alarm system is located, and arm the alarm system.

49.     After arming the alarm system and securely locking the main entrance, it is not unusual for the Hourly Managers to observe unattended shopping carts or flatbeds in the parking lot because the hourly staff responsible for the carts either failed to retrieve them or retrieved them early and then there were late customers bringing carts out. Thus, it is not atypical for Hourly Managers to retrieve and collect

shopping carts and flatbeds even after having already clocked out and locking the main entrance.

50.    The unpaid off-the-clock work performed by Plaintiffs and Hourly Managers after their shifts directly benefits Defendants, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Hourly Managers.

**D.    Off-the-Clock Smartphone Communications**

51.    In addition to the pre-shift, meal-period, and post-shift off-the-clock work activities described above, Hourly Managers are also required to perform substantial amounts of off-the-clock work when they are off-duty and not at the retail store.

52.    Pursuant to Defendants' policies, training and direction, Hourly Managers are required to read and respond to work-related smartphone communications during non-work hours using the WhatsApp Messenger ("WhatsApp"), a free to download messenger application for smartphones. WhatsApp uses the internet to send messages, images, audio or video. The service is very similar to text messaging services, however, because WhatsApp uses the internet to send messages, the cost of using WhatsApp is significantly less than texting. Relevant here, WhatsApp allows users to communicate with each other in groups of individual users, meaning users can communicate with multiple people at

the same time.

53. Defendants' Store Manager expressly instructed Plaintiffs and the Hourly Managers to (a) download and install WhatsApp onto their smartphones; (b) accept an invitation from the Store Manager to join a group chat consisting of all of the retail store's salaried and hourly managers, including the Store Manager, Assistant Store Managers, Service Managers, and Support Managers; and (c) promptly respond to any work-related messages that are directed to them or that are otherwise within their sphere of responsibility, meaning that each Hourly Manager is required to read each and every message sent by any other user who is a member of the group chat, even if the message is not directed to them or is otherwise not within their sphere of responsibility.

54. Reading and responding to these work-related messages during non-work hours takes substantial time, generally anywhere from 15 to 20 or more minutes per day, but Hourly Managers are not compensated for this time.

E. **Exemplary Pay-Period to Illustrate Off-the-Clock Compensation Deficiencies**

55. An example of specific workweeks where Defendants failed to pay Plaintiffs all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

**Pay Period of 01/26/2019 to 02/08/2019**

- Plaintiff Houtman was paid at a rate of $25.97 per hour for his 40.00

regular hours and $39.03629 per hour for 2.48 overtime hours.

- With unpaid pre-shift, meal-period, and post-shift time, as well as unpaid off-the-clock smartphone communications, in a range of 32 to 43 minutes per shift, at five shifts per week, Plaintiff Houtman should have been paid an additional 160-215 minutes at his overtime rate of $39.03629 during the pay period.

Exh. B, Houtman Pay Stub.

## F.  **Defendants Benefited from the Uncompensated Off-the-Clock Work**

56.     At all relevant times, Defendants directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above-described off-the-clock activities performed by Hourly Managers.

57.     At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their Hourly Managers.

58.     At all relevant times, Defendants were able to track the amount of time Hourly Managers spent in connection with the off-the-clock activities. However, Defendants failed to do so and failed to compensate Hourly Managers for the off-the-clock work they performed.

59.     At all relevant times, Hourly Managers were non-exempt employees, subject to the requirements of the FLSA.

60.     At all relevant times, Defendants used their attendance and adherence

policies against the Hourly Managers in order to pressure them into performing the off-the-clock work.

61.     At all relevant times, Defendants' policies and practices deprived Hourly Managers of wages owed for the off-the-clock activities they performed. Because Defendants' Hourly Managers typically worked 40 hours or more in a workweek, Defendants' policies and practices also deprived them of overtime pay.

62.     Defendants knew or should have known that the time spent by Hourly Managers in connection with the off-the-clock activities was compensable under the law. Indeed, in light of Defendants' express instructions to the Hourly Managers that (a) they were required to perform a pre-shift "sweep" of the premises before entering the retail store and clocking in, and (b) they were required to promptly respond to work-related smartphone communications that were directed to them or that were otherwise within their sphere of responsibility, there is no conceivable way for Defendants to establish that they acted in good faith.

63.     Despite knowing Hourly Managers performed work before and after their scheduled shifts and during their unpaid meal breaks, Defendants failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

64.     Unpaid wages related to the off-the-clock work described herein are owed to Hourly Managers at the FLSA mandated overtime premium of one and one-

half their regular hourly rate because Hourly Managers regularly worked in excess of 40 hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

65.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> ***All similarly situated current and former hourly managers who work or have worked for Defendants at any of their retail locations at any time during the three years preceding the filing of this Complaint through judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

66.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated Hourly Managers.

67.     Excluded from the FLSA Collective are Defendants' executives and administrative and professional employees, including computer professionals and outside salespersons.

68.     Consistent with Defendants' policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

69.     Defendants assigned and/or were aware of all of the work that Plaintiffs and the FLSA Collective performed.

70.     As part of their regular business practices, Defendants intentionally,

willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

      a.    Willfully failing to pay their employees, including Plaintiffs and the FLSA Collective, premium overtime wages for hours worked in excess of 40 hours per workweek; and

      b.    Willfully failing to record all of the time that their employees, including Plaintiffs and the FLSA Collective, worked for the benefit of Defendants.

71.    Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

72.    Defendants' unlawful conduct has been widespread, repeated and consistent.

73.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

74.    The employment relationships between Defendants and every proposed

FLSA Collective member are the same. The key issues - the amount of uncompensated pre-shift, meal-period, and post-shift time and the amount of time spent reading and responding to work-related smartphone communications during non-work hours - do not vary substantially among the proposed FLSA Collective members.

75.    Many similarly situated current and former Hourly Managers have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

76.    Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

77.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

78.    Plaintiffs estimate the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds of workers. The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

79.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of the following classes:

> ***All similarly situated current and former hourly managers who work or have worked for Defendants at any of their retail stores***

> *in North Carolina at any time during the applicable statutory period*.

(hereinafter referred to as the "Rule 23 North Carolina Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

> *All similarly situated current and former hourly managers who work or have worked for Defendants at any of their retail stores at any time during the applicable statutory period*.

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

80.    Excluded from the Rule 23 Classes are Defendants' exempt executives and administrative and professional employees, including computer professionals and outside sales persons.

81.    The Rule 23 Classes are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

82.    There is a well-defined community of interest among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether Plaintiffs and the Rule 23 North Carolina Class were compensated at a rate of one-and-one-half times their regular hourly rate for all hours worked in excess of 40 in a workweek pursuant to North Carolina state wage and hour laws;

b. Whether the time spent by Plaintiffs and the Rule 23 North Carolina Class performing off-the-clock work tasks is compensable under North Carolina state wage and hour laws; and

c. The proper measure of damages sustained by Plaintiffs and the Rule 23 North Carolina Class.

83. There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether the time Rule 23 Nationwide Class members spent on pre-shift, mid-shift and post-shift off-the-clock work activities is compensable time;

b. Whether Rule 23 Nationwide Class members are owed wages for time spent performing off-the-clock work activities, and, if so, the appropriate amount thereof; and

c. Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract and/or unjust enrichment.

84. Plaintiffs' claims are typical of those of the Rule 23 Classes in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, promises and course of

conduct as all other Rule 23 Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Class members.

85.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Classes and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Classes.

86.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

87.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

88.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins.*

*Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

89.     Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Classes and declaratory relief is appropriate in this case with respect to the Rule 23 Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq.*
### FAILURE TO PAY OVERTIME WAGES

90.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

91.     At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

92.     At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

93.     Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

94.     Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an

enterprise engaged in commerce or in the production of goods for commerce.

95. At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

96. At all times relevant to this action, Defendants required Plaintiffs and the FLSA Collective to perform (a) no less than 10 to 15 minutes of off-the-clock work during shifts in which they opened the retail store, (b) no less than 5 minutes of off-the-clock work per shift during their unpaid meal breaks, (c) no less than 2 to 3 minutes of off-the-clock work during shifts in which they closed the retail store, and (d) no less than 15 to 20 minutes of off-the-clock work each day in connection with the requirement that they promptly read and respond to work-related smartphone communications during non-work hours. Nevertheless, Defendants failed to pay Plaintiffs and the FLSA Collective the federally mandated overtime compensation for the off-the-clock work.

97. The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective was an essential part of their jobs, and these activities and the time associated with these activities were not *de minimis*.

98. In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of one and one-half

times each employee's regular hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

99. Defendants' FLSA violations were knowing and willful. Defendants knew or could have determined how long it takes Plaintiffs and the FLSA Collective to perform their off-the-clock work. Further, Defendants could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but deliberately chose not to.

100. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 NORTH CAROLINA CLASS ACTION**
**VIOLATIONS OF NORTH CAROLINA WAGE AND HOUR ACT**
**N.C.G.S. §§ 95-25.1, *et seq.***

101. Plaintiffs re-allege and incorporate all previous paragraphs herein.

102. At all times relevant to the action, Defendants were employers covered by the overtime mandates of the North Carolina Wage and Hour Act ("NCWHA"), N.C.G.S. §§ 95-25.1, *et seq.*, and Plaintiffs and the Rule 23 North Carolina Class are employees entitled to the NCWHA's protections.

103. The NCWHA entitles employees to compensation for every hour worked in a workweek. *See* N.C.G.S. § 95-25.3.

104. The NCWHA entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours in excess of 40 hours per week." *See* N.C.G.S. § 95-25.4.

105. Defendants and the Rule 23 North Carolina Class members are "employers" and "employees" for the purposes of the NCWHA.

106. Defendants violated the NCWHA by regularly and repeatedly failing to compensate Plaintiffs and the Rule 23 North Carolina Class for the time spent on the work activities described in this Complaint.

107. As a result, Plaintiffs and the Rule 23 North Carolina Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiffs and the Rule 23 North Carolina Class are entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the NCWHA at an amount to be proven at trial. *See* N.C.G.S. § 95-25.22.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

108. Plaintiffs re-allege and incorporate all previous paragraphs herein.

109. At all times relevant to this action, Defendants had a contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate.

110. Each Rule 23 Nationwide Class member's contractual hourly rate is

identified in paystubs and other records that Defendants prepare as part of their regular business activities.

111.    Plaintiffs and every other Rule 23 Nationwide Class member performed under the contracts by doing their jobs and carrying out the off-the-clock activities that Defendants required or accepted.

112.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for all of the work they performed each shift, Defendants systematically breached their contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

113.    Plaintiffs' and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure gap time claims).

114.    Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Nationwide Class members spent performing off-the-clock activities, which is a fundamental part of an employer's job.

115.    As a direct and proximate result of Defendants' breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Nationwide Class have been damaged, in an amount to be determined at trial.

## COUNT IV
## RULE 23 NATIONWIDE CLASS ACTION
## UNJUST ENRICHMENT

116. Plaintiffs re-allege and incorporate all previous paragraphs herein.

117. This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

118. At all times relevant to this action, Defendants promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendants.

119. Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

120. By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

121. Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

122. Defendants received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

123.   Upon information and belief, Defendants used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

124.   Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

125.   Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

126.   As a direct and proximate result of Defendants' actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the putative FLSA Collective and Rule 23 Classes, request judgment as follows:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.   Certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' North Carolina state law claims (Count II);

c.   Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract and unjust enrichment claims (Counts III-IV);

d.   Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

e.   Designating Plaintiffs as the representatives of the FLSA collective action Class and the Rule 23 Classes, and undersigned counsel as Class counsel for the same;

f.   Declaring Defendants violated the FLSA as cited herein;

g.   Declaring Defendants' violations of the FLSA were willful;

h.   Declaring Defendants violated North Carolina state wage and hour law as cited herein;

i.   Declaring Defendants' violations of North Carolina state wage and hour law were willful;

j.   Declaring Defendants breached their contracts with Plaintiffs and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendants were unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

k.   Granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the collective action Class and the Rule 23 Classes the full amount of damages and liquidated damages available by law;

l.   Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

m.   Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

n.   Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Respectfully Submitted,

Dated: April 10, 2019

s/ James J. Mills
James J. Mills, NC Bar No. 36529
BURNS, DAY & PRESNELL, P.A.
2626 Glenwood Avenue, Suite 560
Raleigh, North Carolina 27608
Phone: (919) 782-1441
jmills@bdppa.com

Kevin J. Stoops (will *pro hac vice*)
Rod M. Johnston (will *pro hac vice*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
rjohnston@sommerspc.com

*Attorneys for Plaintiffs and the putative Class/Collective action members*