**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:19-CV-00041-KDB-DCK**

DANIEL DANFORD
HARRY HOUTMAN**,**

       **Plaintiffs,**

  **v.**

LOWE'S HOME CENTERS, LLC
LOWE'S COMPANIES INC**,**

       **Defendants.**

**ORDER**

      **THIS MATTER** is before the Court on Plaintiffs Daniel Danford and Harry Houtman's (collectively, "Plaintiffs") Pre-Discovery Motion for Conditional Collective Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b). (Doc. No. 20). Plaintiffs seek conditional collective certification for "Hourly Managers" (defined below) who have been uncompensated for time worked at Defendant Lowe's Home Centers, LLC and Lowe's Companies Inc.'s (together, "Lowe's") stores nationwide.

      For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for collective certification. The Court grants conditional collective certification for the putative class as described herein and authorizes notice by U.S. Mail and e-mail as set forth below.

## I. BACKGROUND

      Defendants Lowe's Companies, Inc. and Lowe's Home Centers, LLC operate a chain of home improvement stores across the country. (Doc. No. 20-1, at 8; Doc. No. 17, at 6). Plaintiffs worked as "Hourly Managers" for Lowe's. Plaintiff Danford worked as an hourly Department

1

Manager and Service Manager at the Lowe's North Raleigh Store (Store #0444) from 2011 until 2018. (Doc. No. 17-5). Plaintiff Houtman worked as an Hourly Manager at four different Lowe's stores across the country from 2006 until 2019, including the North Raleigh Store (Store #0444). (Doc. No. 17-5). Both allege that during their employment with Lowe's they routinely worked off-the-clock and were not compensated for all time worked.

For purposes of this action, the term "Hourly Managers" refers to various manager positions at Lowe's. The list includes, but is not limited to, Back-end Department Supervisors, Department Managers, Front-End Department Supervisors, Loss Prevention Managers, Night-Ops Supervisors, Overnight Managers, Product Service Department Supervisors, Service Managers, Installed Sales Department Managers, Sales Floor Department Supervisors, and Support Managers. (Doc. No. 47-5, at 2; *see also* Doc. No. 33, at 19). Plaintiffs assert that all the positions have the same basic job duties, which includes occasionally opening and closing the store, supervising employees, and managing the store on a day to day basis. (Doc. No. 33, at 19; Doc. No. 20-1, at 9). Hourly Managers typically work up to 40 or more hours per week. (Doc. No. 20-1, at 9).

Plaintiffs contend that an Hourly Manager's responsibilities have often led to unpaid hours and overtime. In large part they blame Lowe's nationwide time-keeping system "Kronos." (Doc. No. 20-1, at 6-7). The Kronos system only allows employees to clock in and out when they are physically inside the store. (Doc. No. 20-1, at 12). Thus, job responsibilities that are performed when the employee is physically outside of the store cannot be logged. (Doc. No. 20-1, at 13). While Hourly Managers can override and retroactively adjust other hourly employees' work hours in the Kronos system, they cannot retroactively adjust their own work hours. *Id.*

Plaintiffs allege two main categories of uncompensated work. (Doc. No. 20-1, at 13-18). The first category is opening and closing the store while unable to contemporaneously log their time. If

an Hourly Manager is tasked with opening the store, he or she must do a perimeter check, unlock the main entrance, turn off the alarm, let other employees in, and turn on the computer before being able to clock into Kronos. (Doc. No. 20-1, at 13-14). The perimeter check requires the manager to drive his or her vehicle around the perimeter of the store to check for anything out of the ordinary. *Id.* Similarly, when closing the store, an Hourly Manager must clock out of Kronos before arming the alarm system and locking the door. (Doc. No. 20-1, at 16). The second category of alleged uncompensated work is off the clock electronic communications. (Doc. No. 20-1, at 15). Plaintiffs claim that all Hourly Managers are required to download a messaging application, read, and respond to work-related messages while on lunch breaks and when not at work. *Id.* According to the Plaintiffs, these categories of uncompensated work are not isolated to any particular store or region, but are occurring in Lowe's stores nationwide. (Doc. No. 20-1, at 17).

## II. PROCEDURAL HISTORY

Plaintiffs filed a Complaint against Lowe's on April 11, 2019 (Doc. No. 1) and an Amended Complaint on June 12, 2019. (Doc. No. 17). Plaintiffs allege in their Amended Complaint that Defendants willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to compensate Hourly Managers for all hours worked. (Doc. No. 17). Plaintiffs also claim Lowe's violated the California Labor Code and IWC Wage Orders, the North Carolina Wage and Hour Act, and assert claims for breach of contract and unjust enrichment. All of these claims are asserted as class actions. (Doc. No. 17).

After filing their Amended Complaint, Plaintiffs filed this motion for Conditional Collective Certification and Court-Authorized Notice to Potential Opt-in Plaintiffs Pursuant to 29 U.S.C. § 216(b). (Doc. No. 20). Prior to responding to Plaintiffs' complaint and motion for

conditional class certification, Lowe's filed a Motion for Expedited Discovery and to Stay Briefing on Plaintiffs' conditional collective certification motion. (Doc. No. 21 & 22).

Lowe's then filed a Partial Motion to Dismiss Plaintiffs' First Amended Collective and Class Action Complaint. (Doc. No. 27). In this motion, Lowe's sought the dismissal of the counts arising under California law. (Doc. No. 21 at 1). They argued that Houtman was the only named plaintiff with standing to assert such claims and that he is subject to arbitration. *Id.* Lowe's also filed a motion to compel arbitration of Henry Houtman's claims and to dismiss, or in the alternative, stay the proceedings. (Doc. No. 29).

Soon after Lowe's motion to dismiss, both parties filed a Joint Motion for Stipulation of Dismissal that dismissed Harry Houtman as a Plaintiff as well as all claims arising under California law. (Doc. No. 38). This Court granted the motion on August 2, 2019 and Henry Houtman was dismissed as a plaintiff. (Doc. No. 40).

Within two weeks of the hearing on Plaintiffs' conditional collective certification, Defendants filed two supplemental memoranda. The first was a corrective supplemental memorandum. (Doc. No. 43). The second, filed just two day before oral arguments, included six declarations by Lowe's employees purporting to counter the factual allegations in Plaintiffs' filings. (Doc. No. 44).

At oral arguments on September 19, 2019, the Court struck Defendants' second supplemental memorandum (Doc. No. 44) as untimely and barred by Local Rule 7.1. The Court also denied Defendants' motion to expedite discovery. The Court took the motion seeking conditional collective certification under advisement, but ordered both parties to meet and discuss by September 30, 2019 how to define a putative class in the event the Court decides to order

conditional certification. The Court informed the parties that if they failed to agree upon a putative

class, the Court would define the class as it deems appropriate.

On September 30, 2019 each party submitted a separate proposed notice to the Court and

expressed they were unable to agree on a putative class. After having carefully reviewed both

parties' proposed notices, the Court will define the class and approve the notice as described in this

Order.

## II. LEGAL STANDARD

The FLSA "embodies a federal legislative scheme to protect covered employees from

prohibited employer conduct." *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 831 (E.D. Va. 2008).

A plaintiff alleging an FLSA violation may bring suit on his or her own behalf or on behalf of other

employees who are similarly situated. 29 U.S.C. § 216(b). Section 216(b) explains the process for

a collective action:

> An action to recover the liability prescribed [under the FLSA] may be
> maintained against any employer . . . in any Federal or State court of
> competent jurisdiction by any one or more employees for and in behalf of
> himself or themselves and other employees similarly situated. No employee
> shall be a party plaintiff to any such action unless he gives his consent in
> writing to become such a party and such consent is filed in the court in which
> such action is brought.

"Thus, there are two requirements for the certification of a FLSA collective action: (1) the members

of the proposed class must be 'similarly situated,' and (2) the class members must 'opt-in' by filing

their consent to suit." *Dearman v. Collegiate Housing Services, Inc.*, No. 5:17-cv-57, 2018 WL

1566333 (W.D.N.C. Mar. 30, 2018); *see also Long v. CPI Sec. Sys., Inc.*, 292 F.R.D. 296, 298

(W.D.N.C. 2013)*; Romero v. Mountaire Farms, Inc.,* 796 F.Supp. 2d 700, 705 (E.D.N.C. 2011).

"Similarly situated" is not defined in the FLSA and the Fourth Circuit has not provided

guidance on how it should be applied. *Long*, 292 F.R.D. at 298. "However, federal district courts

in the Fourth Circuit typically follow a two-step approach when deciding whether the named plaintiffs are similarly situated to potential plaintiffs for the purposes of certifying the collective action." *Id.*; *see also Holland v. Fulenwider Enterprises, Inc.*, No. 1:17-cv-48, 2018 WL 700801 (W.D.N.C. Feb. 2, 2018).

At the first stage, also called the "notice stage," "the court makes a preliminary determination whether to conditionally certify the class based upon the limited record before the court." *Long*, 292 F.R.D. at 298. At this stage, the plaintiff bears a "fairly lenient" burden, needing only to show "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Holland*, 2018 WL 700801 at *2; *see also In re Family Dollar FLSA Litigation*, No. 3:12-cv-1951, 2014 WL 1091356 (W.D.N.C. Mar. 18, 2014). The plaintiff also must show that the putative class is manageable. *See In re Family Dollar FLSA Litigation*, 2014 WL 1091356 (W.D.N.C. Mar. 18, 2014). A "fairly lenient" standard does require more than just bare assertions. For example, relying solely on a common job description is not enough to show that potential members are similarly situated. *Id.*

If the court grants the motion to conditionally certify, it then will authorize plaintiff's counsel to provide putative plaintiffs with notice. *Long*, 292 F.R.D. at 299. District courts have wide discretion in facilitating notice to potential claimants. *Hoffman-La Roche Inc. v. Sperling*, 110 S. Ct. 482 (1989). This includes limiting the size of the proposed class, restricting duplicative notices, and altering the content of the notice. *See e.g., Moseman v. U.S. Bank Nat'l Ass'n*, No. 3:17-cv-481, 2018 WL 3616864 (W.D.N.C. June 12, 2018).

Stage two arises if and when the defendant files a motion for decertification. *Long*, 292 F.R.D. at 299. This generally occurs after discovery is complete. *Id.* At this more advanced stage of the litigation, the court will conduct the same "similarly situated" analysis but will apply a

heightened fact-specific standard. *Id.* "Upon a determination that the plaintiffs established the burden of proving they are 'similarly situated,' the collective action proceeds to trial." *Id.* "On the contrary, if the court determines that the plaintiffs are in fact, not 'similarly situated,' the class is decertified and the original plaintiffs may proceed on their individual claims." *Id.*

### III. DISCUSSION

A. Conditional Collective Certification

Plaintiffs seek to conditionally certify the following opt-in class:

> All current and former hourly managers, including but not limited to: Department Managers; Overnight Managers; Product Service Department Managers; Installed Sales Department Managers; Loss Prevention Managers; Service Managers; Support Managers; Back-End Department Supervisors; Front-End Department Supervisors; Night-Ops Supervisors; and Sales Floor Department Supervisors(hereinafter collectively referred to as "Hourly Managers"), who work or have worked for Lowe's Companies, Inc. and Lowe's Home Centers, LLC ("Lowe's") at any of their retail stores at any time on or after April 11, 2016 and have performed off-the-clock work in connection with opening or closing the store or in connection with receiving or responding to work related communications on one or more smartphone applications (including, but not limited to: WhatsApp and GroupMe).

(Doc. No. 47-1). In support of this motion, Plaintiffs argue that they have sufficiently met the "similarly situated" standard. Plaintiffs have submitted the declaration of Daniel Danford (Doc. No. 20-5) and the declaration of opt-in plaintiff Katie Shook (Doc. No. 36-1).[1] Both allege that they and others were uncompensated for work done while not clocked into the Kronos system. Specifically, Plaintiffs' declarations show that both worked as Hourly Managers for Lowe's and were responsible for opening and closing the stores as

---

[1] Because Harry Houtman was voluntarily dismissed as a plaintiff, the Court does not consider his declaration. *See Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 663 fn. 1 (S.D.N.Y. 2009) ("This Court does not however, rely on the declaration submitted by Wilma Bulka in making its determination since Ms. Bulka has voluntarily withdrawn her consent to be a named plaintiff in this case.") (citations omitted). Even if the Court were to consider Houtman's declaration, however, the result would be the same.

well as required to download, read, and reply to electronic communications while not clocked into Kronos. Plaintiffs claim they were not compensated for this work and that Lowe's knew or should have known that Hourly Managers were working when unable to clock into Kronos because of the nature of the Kronos system itself. Specifically, they allege that Lowe's knew that some of the tasks required of their Hourly Managers, like opening and closing, could not be done while clocked in and were not compensated.

In response to Plaintiffs' arguments, Lowe's contends that Plaintiffs cannot establish a common plan or policy, and thus the Hourly Managers are not "similarly situated." In their brief and at oral arguments, Lowe's insisted that the presence of their "Hours Reporting Procedure" ("HRP") (the process by which employees can request adjustment of their "clocked" time) negates Plaintiffs claim that there is a common plan or policy preventing them from being paid for time worked. (Doc. No. 33, at 5; Ex. A; Ex. 3, at1). The HRP directs employees to inform the manager above them or to call Lowe's Human Resources department to report time not clocked in Kronos. (Doc. No. 33, at 6). Additionally, Lowe's alleges that its policy requires employees to verify their time after each day and to request a change if necessary. *Id.* With regards to electronic communications, Lowe's disputes Plaintiffs' claim that messaging devices are used at all stores. (Doc. No. 33, at 7). Rather, Lowe's says that use of these messaging devices is entirely up to each individual store manager and it is not a policy of Lowe's to use a messaging application at its stores. (Doc. No. 43, at 2).

Lowe's further argues that the putative class is not "manageable" because it will require individualized, fact-specific inquiries to determine whether a particular Hourly Manager is "similarly situated" to the Plaintiffs. (Doc. No. 33, at 16-21). First, Lowe's claims that each Hourly Manager has his or her own particularized job duties and tasks that can vary from store to store. *Id.*

Second, Lowe's says that the Hourly Manager roles have changed at least three times—once in 2016-17, when Department Managers had a change in duties and titles; again in 2017, when Lowe's eliminated most Department Manager roles; and still again in 2018, when there was a restructuring of the Service and Support Managers' role. (Doc. No. 33, at 19-20). They claim that along with these changes came even more variation in job responsibilities and tasks for each Hourly Manager. Third, Lowe's contends that because of the large number of stores and the need to assess alleged individual failures to follow time-keeping policies, certification is improper. (Doc. No. 33, at 22). Certification, in Lowe's view, would require the Court to determine who was following the HRP and who was not for each opt-in plaintiff. Defendants alternatively argue that if the Court certifies the class, it should be limited to only those who worked in the same positions, at the same time, and in the same stores as the Plaintiffs. (Doc. No. 33, at 23).

Having considered the parties' arguments and the limited record before the Court, the Court finds that, in light of the "lenient" governing standard, the following class should be conditionally certified:

> All current and former hourly managers, including but not limited to: Department Managers; Overnight Managers; Product Service Department Managers; Installed Sales Department Managers; Loss Prevention Managers; Service Managers; Support Managers; Back-End Department Supervisors; Front-End Department Supervisors; Night-Ops Supervisors; and Sales Floor Department Supervisors(hereinafter collectively referred to as "Hourly Managers"), who work or have worked for Lowe's Companies, Inc. and Lowe's Home Centers, LLC ("Lowe's) at any of their retail stores at any time on or after April 11, 2016 and have performed off-the-clock work in connection with opening or closing the store or in connection with receiving or responding to work related communications on one or more smartphone applications (including, but not limited to: WhatsApp and GroupMe) and were not paid for such work.

The Court finds that adding "and were not paid for such work" best defines the putative class.

The facts alleged here are strikingly similar to *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658 (S.D.N.Y. Aug. 21, 2007). In *Zivali*, plaintiffs alleged that defendant's timekeeping system

("MyTime") systematically failed to account for actual time worked by hourly employees. *Id.* at 660. Plaintiffs claimed they were required to read and respond to electronic communications, open and close the store, and participate in various company-related activities without being able to log their time. *Id.* Much like the Kronos system here, MyTime required employees to be physically present to log onto the system and only supervisors possessed the capability to override previously logged times. *Id.* In granting the plaintiffs' motion for conditional certification, the court held:

> Plaintiffs in this case have made the modest showing necessary for such conditional certification. First, there is no question that defendant Mobility uniformly utilizes the MyTime computerized timekeeping system across all of its retail stores to record the time worked by all hourly employees. Second, only the time reported in MyTime is paid to hourly employees . . . . Therefore, any time worked "off the clock" that is not inputted into MyTime goes unpaid. Third, Mobility employees who must rely on the MyTime system to keep accurate track of hours worked can only log into the system (i.e., "punch in" or "punch out") while they are physically at a retail store location where company terminals are available. Finally, only a supervisor has override capability to retroactively adjust an employee's work hours as recorded in MyTime.

*Id.* at 661-62. The court also noted that the substantively similar job duties, as set forth in the defendant's job description postings, showed that the putative plaintiffs face similar obstacles when it came to accurately recording time worked in the defendant's MyTime system. *Id.* at 662.

Similarly, here, Lowe's systematic use of Kronos, the alleged "virtually identical" job descriptions for certain Hourly Managers, and the substantial similarity in job responsibilities is enough to show putative plaintiffs are similarly situated. (*See* Doc. No. 20-7 (containing job descriptions posted on Lowe's website)). A fact-intensive inquiry into the specific tasks of each Hourly Manager at each store is inappropriate at the notice stage, as Plaintiffs are seeking only conditional certification. Such an inquiry is reserved for the decertification stage or for the merits of the dispute. *See Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 826 (D. Md. 2012) (stating that such a fact-intensive inquiry "delves too deeply into the merits of the dispute;

such a steep plunge is inappropriate for such an early stage of a FLSA collective action"); *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 470 (E.D.N.C. 2010) ("[C]ourts have routinely recognized that where an employer has a common practice of failing to pay employees for all hours worked, factual distinctions of the type claimed by [defendant] provide no basis to deny initial certification of a collective action under the FLSA."). Lowe's argument that the failure to follow the HRP creates an unmanageable and highly-individualized class is also more appropriate for the decertification stage or the merits than it is at this notice stage. *See Long*, 292 F.R.D. at 303 ("[Defendant] will have an opportunity to argue that individual inquiries predominate over common issues, based on discovery, at the second phase."). At this point, the question is whether Plaintiffs can show that there are others similarly situated to them who are working and not being compensated. Plaintiffs have made a sufficient, albeit certainly modest, showing of these facts.

Lowe's relies heavily on *Blaney v. Charlotte-Mecklenburg Hospital Authority*, No. 3:10-cv-592, 2011 WL 4351631 (W.D.N.C. Sept. 16, 2011), for its proposition that a "lack of a centralized policy is fatal to conditional certification." (Doc. No. 33, p. 11). In *Blaney*, the Court applied a different, higher "intermediate" standard because substantial discovery had been conducted prior to the plaintiff's filing of her conditional certification motion. *Blaney*, 2011 WL 4351631 at *5; *see also Long*, 292 F.R.D. at 299-300 (noting that *Blaney* is distinguishable because, in *Blaney*, the parties had agreed and anticipated that some discovery was to occur prior to the plaintiff filing her certification motion). Here, however, no such discovery has been conducted prior to Plaintiffs' filing of their conditional certification motion. Defendants own motion to expedite discovery immediately after Plaintiffs filed their conditional certification motion is evidence of this fact. Thus, an intermediate standard is not an appropriate standard with which to

evaluate Plaintiffs' claims and Lowe's reliance on *Blaney* is therefore misplaced at this stage of the case.

Lowe's also relies on *Syrja v. Westat*, 756 F. Supp. 2d 682 (D. Md. 2010) for its contention that the number of putative plaintiffs is unmanageable. (Doc. No. 33, p. 17). Lowe's argues the number of different Hourly Manager jobs and the varying responsibilities make the putative class unmanageable. *Id.* But, *Syrja* largely relied on the fact that members of the proposed class were able to set their own work schedules "[t]o a significant degree" and their tasks varied considerably. *Id*. By contrast, the Hourly Managers at Lowe's do not have the freedom to set their own schedules, and there is no dispute that Hourly Managers may be required to open and close the store or use electronic communications.

Further, Lowe's concerns about highly-individualized inquiries can be addressed by re-defining the class. Rather than describing the opt-in class based solely on job title, as was originally requested by Plaintiffs (*see* Doc. No. 20, at 1), defining it based on the alleged wrongdoing eliminates the need for a highly-individualized inquiry by this Court. Opt-in plaintiffs will be those who, like Danford, were regularly required to open and close the store and respond to electronic communication and went uncompensated.

There are also sound policy reasons to grant Plaintiffs' motion for conditional certification. The FLSA provides a mechanism for employees to bring collective actions that give plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to

participate." *Id.* Also, as Plaintiffs' counsel stated during oral argument, the expiring statute of limitations for plaintiffs to bring their claims counsels in favor of prompt notice to the putative class.

In sum, the Court finds that the putative class members are similarly situated with regard Lowe's policy and practice of not paying for time worked outside of the Kronos system. The uniform use of Kronos across all of Defendant's stores nationwide is evidence of a common policy, as is the policy that only time imputed into Kronos is compensated for absent request and authorization (which is allegedly discouraged). Additionally, the fact that Hourly Managers are only able to clock into the system when physically present at the store and that they are unable to override time clocked retroactively go to show that Plaintiffs have met the fairly lenient burden that they are similarly situated. Of course, this conditional certification does not prejudge whether a class will ultimately be certified if Defendants pursue decertification and, at that time the Court will reconsider Defendants' arguments.

B. Notice

Once a court decides to conditionally certify a class, the next step is authorizing notice to putative plaintiffs. Plaintiffs ask the Court to authorize notification by text, email, and mail. (Doc. No. 20-1, at 30-31). Additionally, they ask for a 60-day opt-in period and permission to issue one reminder email 30 days into the opt-in period. (Doc. No. 22-1, at 31). Plaintiffs request Lowe's turn over information identifying the FLSA Collective by providing names, last known addresses, dates and location of employment, phone numbers, and email addresses in electronic format within 14 days of this Order. (Doc. No. 20-1, at 31).

Lowe's asks this Court to deny Plaintiffs' request for notice by text message since Plaintiffs have shown no special need for it. (Doc. No. 33, at 24). Defendants also request the Court to deny

Plaintiffs' request for reminder notices, arguing 60-days is enough time for a member to be adequately informed of their rights and act as they see fit without a reminder. (Doc. 33, at 24).

The parties have each filed a proposed notice with this Court. (*See* Doc. Nos. 47 & 48). After carefully considering both notices and the parties' disagreements within, the Court has incorporated language from each party and has made further changes as it deems appropriate. The approved notice with the Court's changes is attached to this Order.

This Court has broad discretion in determining how notice will be sent to putative plaintiffs. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). It is well settled that notice by email and mail are frequently permitted. *See, e.g., Rehberg v. Flowers Foods, Inc.*, No. 12-cv-596, 2013 WL 1190290 at *3 (W.D.N.C. Mar. 22, 2013). Accordingly, Plaintiffs are permitted to send notice by U.S. Mail and e-mail to all Hourly Managers who worked at Lowe's on or after April 11, 2016. The Court is mindful of the privacy concerns of the potential plaintiffs and finds that the disclosure of telephone numbers is appropriate in this case, but only for those members whose initial notice by mail is "returned undeliverable" and e-mail bounces back. *See Clark v.* Williamson, No. 1:16-cv-1413, 2018 WL 1626305 at *6 (M.D.N.C. Mar. 30, 2018) (allowing the use of putative plaintiffs' phone numbers if mail and email notices return undeliverable); *Houston v. URS Corp.*, 591 F. Supp. 2d 821 (E.D. Va. 2008). Plaintiffs' request for a reminder notice 30-days into the 60-day opt-in period is denied. Other district courts in this Circuit have denied reminder notices for such a relatively short opt-in period. *See e.g., Moseman v. U.S. Bank Nat'l Ass'n*, No. 3:17-cv-481, 2018 WL 361684 at *2 (W.D.N.C. June 12, 2018); *Irvine v. Destination Wild Dunes Mgmt.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015).

The Court directs Lowe's to turn over to Plaintiffs' counsel an electronic copy of the full names, last known addresses, email addresses, phone numbers, and dates and location of

employment for all Hourly Managers who worked at Lowe's on or after April 11, 2016 within 14 days of this Order. (*See* Doc. No. 20-1, at 24). To protect the privacy interests of the potential class members, the Court will order that the parties maintain confidentiality over the putative class members' contact information. Lowe's is to produce such information to Plaintiffs' counsel and Plaintiffs' counsel is only to use the information in connection with this litigation.

## IV. CONCLUSION

**NOW IT IS THEREFORE ORDERED THAT** Plaintiff's Motion (Doc. No. 20) is **GRANTED IN PART** and **DENIED IN PART.**

1. The Court will grant Plaintiffs' motion for conditional collective certification with regards to the following defined class:

> All current and former hourly managers, including but not limited to: Department Managers; Overnight Managers; Product Service Department Managers; Installed Sales Department Managers; Loss Prevention Managers; Service Managers; Support Managers; Back-End Department Supervisors; Front-End Department Supervisors; Night-Ops Supervisors; and Sales Floor Department Supervisors(hereinafter collectively referred to as "Hourly Managers"), who work or have worked for Lowe's Companies, Inc. and Lowe's Home Centers, LLC ("Lowe's) at any of their retail stores at any time on or after April 11, 2016 and have performed off-the-clock work in connection with opening or closing the store or in connection with receiving or responding to work related communications on one or more smartphone applications (including, but not limited to: WhatsApp and GroupMe) and was not paid for such work**;**

2. The Court grants Plaintiffs' request for notification by U.S. Mail and e-mail to all Hourly Managers who worked at Lowe's on or after April 11, 2016 but denies Plaintiffs' request for text message notice, unless initial notice is undeliverable;

3. The Court also denies Plaintiff's request to send a reminder notice by e-mail 30 days into the 60-day opt-in period; and

4. Lowe's is ordered to produce to Plaintiffs' counsel an electronic list of all Hourly Managers who worked at Lowe's on or after April 11, 2016 that includes members' full names, last known addresses, phone numbers, email addresses, and dates and location of employment within 14 days of this Order.

**SO ORDERED.**

Signed: October 2, 2019

Kenneth D. Bell
United States District Judge

# Notice of overtime pay lawsuit against Lowe's Companies, Inc. and Lowe's Home Centers, LLC

**A court authorized this notice. This is not a solicitation from a lawyer.**

TO:    All current and former hourly managers, including but not limited to: Department Managers; Overnight Managers; Product Service Department Managers; Installed Sales Department Managers; Loss Prevention Managers; Service Managers; Support Managers; Back-End Department Supervisors; Front-End Department Supervisors; Night-Ops Supervisors; and Sales Floor Department Supervisors (hereinafter collectively referred to as "Hourly Managers"), who work or have worked for Lowe's Companies, Inc. and Lowe's Home Centers, LLC ("Lowe's) at any of their retail stores at any time on or after April 11, 2016 and have performed off-the-clock work in connection with opening or closing the store or in connection with receiving or responding to work related communications on one or more smartphone applications (including, but not limited to: WhatsApp and GroupMe) and were not paid for such work.

DATE:    _____, 2019

RE:    Fair Labor Standards Act ("FLSA") lawsuit against Lowe's seeking compensation for all hours worked by Hourly Managers.

*Danford et al. v. Lowe's Companies, Inc. et al.*, Case No. 5:19-cv-0041-FDW-DCK, pending in the United States District Court for the Western District of North Carolina, Charlotte Division.

**This notice describes a lawsuit that you are allowed to join.**

The purpose of this Notice is to inform you of the existence of a collective action lawsuit against Lowe's. The Court has determined that you may be similarly situated to Daniel Danford, the Named Plaintiff who brought this case. Therefore, the Court has ordered that this Notice be sent to you, to explain what the lawsuit is about, so that you can decide whether to "opt in" (join the lawsuit).

Please note that the Court has not ruled on the merits of the lawsuit. The Court has only ruled that it is important that you be notified of the existence of the lawsuit so that you can determine (a) how to protect your rights and (b) whether you wish to join it.

1

## The lawsuit seeks to recover overtime pay for Hourly Managers who work or have worked for Lowe's at any of its retail stores at any time on or after April 11, 2016.

Plaintiff Daniel Danford("Plaintiff") brought this action under the Fair Labor Standards Act ("FLSA") on behalf of himself and all other current and former Hourly Managers who work or have worked for Lowe's at any of its retail stores at any time on or after April 11, 2016.

Plaintiff contends that he and other current and former Hourly Managers are owed compensation, including overtime pay, under the FLSA. Specifically, Plaintiff alleges that Lowe's has violated the FLSA by requiring Hourly Managers to routinely perform certain pre-shift and post-shift activities and other off-the-clock work without pay. These off-the-clock activities include conducting perimeter checks, opening and closing the retail store, locking and unlocking the main entrance, arming and disarming the alarm system, and receiving/responding to work related communications on one or more smartphone applications (including, but not limited to: WhatsApp and GroupMe). Plaintiff alleges that he and all employees similarly situated are entitled to recover unpaid compensation, including overtime pay; liquidated damages (equal to the unpaid overtime pay); interest; and attorneys' fees and costs associated with bringing this lawsuit.

Lowe's contests all claims that have been asserted and denies any wrongdoing or liability.

## How you can exercise your right to join this lawsuit.

If you are an Hourly Manager as defined on page 1, you may choose to join this suit (that is, you may "opt in"). To opt in, you must submit a "Consent to Join" form. The Consent to Join form is enclosed with this notice. You may use the enclosed envelope to mail your form, or you may fax it or e-mail it to Plaintiff's counsel (whose information is available in Section 9, below), or you may request to submit your form online by emailing FLSA@sommerspc.com.

## The consequences of joining this lawsuit.

If you file a Consent to Join form by following the instructions, you will be bound by the judgment (the final result of the lawsuit), whether favorable or unfavorable (that is, whether the Plaintiff wins the case against Lowe's or not).

Plaintiff's attorneys will **not** charge you directly for their work in this case. If there is no recovery (*i.e.*, if the Plaintiff recovers no money from Lowe's), you will not have to pay the attorneys for any of their work. If there is a recovery, Plaintiff's attorneys will receive whatever attorneys' fees the Court orders. Those fees may be subtracted from the recovery obtained from Lowe's, or they may be paid separately by Lowe's, or they may be a combination of the two.

If you join this lawsuit, you are choosing to be represented by Plaintiff's counsel and the Named Plaintiff who brought this case to make decisions and agreements on your behalf concerning the lawsuit. These decisions and agreements will then be binding on you.

2

If you decide to opt in to this lawsuit, you may be required to produce documents and information, give a deposition under oath, respond to written discovery requests, and/or testify in court, including at trial.

## The consequences of not joining this lawsuit.

If you choose not to join this lawsuit, you will not be affected by any judgment in this lawsuit on this FLSA claim, whether favorable or unfavorable. If you choose not to join this lawsuit, you may file your own lawsuit and select the attorney of your choice. However, if you do not join this lawsuit, you will not be able to receive any money recovered in this lawsuit.

## What happens next?

The lawsuit will proceed toward trial, which could take many months or years. If your contact information changes, and you want Plaintiff's counsel to be able to contact you (*e.g.*, to update you about the case, to send you money from any settlement or judgment, etc.), you may provide your contact information to Plaintiff's counsel (whose information is available in Section 9, below).

## Preservation of relevant evidence.

You may wish to preserve evidence useful in proving your claim and recovering overtime pay for all overtime hours you worked, if the lawsuit is successful. In overtime pay lawsuits like this one, commonly used evidence includes any notes you may have kept about your job duties or hours worked, policy and procedure documents and manuals regarding your work, and even your personal memory about your work as an Hourly Manager.

Your memory about your work may be particularly important in proving your entitlement to overtime pay, for two reasons. First, your legal entitlement to overtime depends in part on what kinds of tasks you spend time on each shift. Second, you are allowed to prove the number of overtime hours you worked based in part on your memory of the schedule you worked, even if your memory is not precise.

Therefore, you may wish to hold onto documents related to your work at Lowe's and take notes about your memory of your job duties and hours worked.

## No retaliation permitted.

Federal law prohibits Lowe's from retaliating against you in any way (for example, firing you, giving you unfair reviews, cutting your pay, failing to promote you, etc.) for exercising your rights under the FLSA (for example, by joining this lawsuit or by providing evidence in support of the Plaintiffs).

3

**Your legal representation if you join.**

If you choose to join this lawsuit, you will be represented by the Named Plaintiff through his attorneys. They are:

SOMMERS SCHWARTZ, P.C.                    BURNS, DAY & PRESNELL, P.A.
Kevin J. Stoops                          James J. Mills
Rod M. Johnston                          2626 Glenwood Avenue, Suite 560
One Towne Square, Suite 1700             Raleigh, North Carolina 27608
Southfield, Michigan 48076               Telephone: [ADMINISTRATOR #]
Telephone: [ADMINISTRATOR #]
Fax: 248-936-2147
Email: FLSA@sommerspc.com

If you want further information about this lawsuit, or have questions about the procedure or deadline for filing a "Consent to Join," please contact Plaintiff's Counsel.

**This notice has been authorized by the Court.**

This notice and its contents have been authorized by the United States District Court for the Western District of North Carolina, the Honorable Kenneth D. Bell presiding. The Court has taken no position regarding the merits of Plaintiff's claims or of Lowe's defenses. Do not contact the Court regarding this lawsuit.

4

*Court-Authorized Notice*

**If you worked for Lowe's Companies, Inc. and Lowe's Home Centers, LLC ("Lowe's") as an hourly manager, including but not limited to: Department Managers; Overnight Managers; Product Service Department Managers; Installed Sales Department Managers; Loss Prevention Managers; Service Managers; Support Managers; Back-End Department Supervisors; Front-End Department Supervisors; Night-Ops Supervisors; and Sales Floor Department Supervisors (hereinafter collectively referred to as "Hourly Managers") at any time on or after April 11, 2016, and have performed uncompensated off-the-clock work in connection with opening or closing the store or in connection with receiving or responding to work related communications on one or more smartphone applications (including, but not limited to: WhatsApp and GroupMe), please read this notice.**

- **Why are you writing me?** You are getting this notice because Lowe's records show that you work or worked for Lowe's as an **Hourly Manager** during the relevant time covered by the lawsuit. A lawsuit has been brought against Lowe's claiming that Hourly Managers were not paid all wages, including overtime, as required by law. Specifically, the lawsuit alleges that Lowe's violated the law by requiring Hourly Managers to routinely perform certain pre-shift and post-shift activities and other off-the-clock work without pay. These off-the-clock activities include conducting perimeter checks, opening and closing the retail store, locking and unlocking the main entrance, arming and disarming the alarm system, and receiving/responding to work related communications on one or more smartphone applications (including, but not limited to: WhatsApp and GroupMe). The lawsuit alleges that Hourly Managers are entitled to recover unpaid wages, including overtime pay; liquidated damages (equal to the unpaid

5

overtime pay); interest; and attorneys' fees and costs associated with bringing the lawsuit. Lowe's denies all the allegations. The purpose of this notice is to notify you of your right to join this case. Please note that the Court has not ruled on the merits of the lawsuit.

- **How can I get more information?** Please visit @@@@@, which provides the full Court-authorized notice mailed and emailed to you earlier, including information about the collective action lawsuit, your rights, and the lawyers working for you.

- **How can I join the lawsuit ("opt in")?** To join the lawsuit ("opt in"), you can (a) fill out and mail the attached postcard, (b) submit the consent to join form online at @@@@@@@, or (c) print out a consent to join form available at that website and email, fax, or mail it to the Plaintiff's attorneys at the contact information listed on the website. If you join this lawsuit, you may be asked to provide information, documents, and/or testimony at a deposition and/or trial regarding the issues in the case. If so, Plaintiff's counsel will assist you.

- **What is the deadline to join the lawsuit?** The deadline is **XX, 2019**. Forms must be received or postmarked by then. Late forms will not be accepted.

Lowe's Hourly Managers Overtime Case
Debra A. Nichols, Paralegal
Sommers Schwartz, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076

## Consent To Join Form

I work or worked for Lowe's Companies, Inc. and Lowe's Home Centers, LLC ("Lowe's") on or after April 11, 2016 as an Hourly Manager and performed off-the-clock work in connection with opening or closing the store or in connection with receiving or responding to work related communications on one or more smartphone applications (including, but not limited to: WhatsApp and GroupMe) and was not paid for such work.

I choose to participate in the lawsuit titled *Danford et al. v. Lowe's Companies, Inc. et al.*, Case No. 5:19-cv-0041-FDW-DCK (pending in the United States District Court for the Western District of North Carolina), to recover unpaid wages, including overtime pay, under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and other relief under state and federal law.

I choose to be represented in this action by the Named Plaintiff, Sommers Schwartz, P.C., and Burns, Day & Presnell, P.A. ("Plaintiffs' Counsel"). I agree to be bound by their decisions in the litigation and by any adjudication of this action by a court, whether it is favorable or unfavorable. I understand that reasonable costs expended by Plaintiff's Counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiff's Counsel will petition the Court to award them attorneys' fees from any settlement or judgment.

I also consent to join any separate or subsequent action to assert my claims against Lowe's and/or any related entities or persons potentially liable.

(*Please print legibly*)

Print Name:    _____

Signature:     _____

Date:          _____

*To be valid, please return via email, facsimile, or mailed and postmarked by* **xx, 2019**

1

## Further Information Regarding Consent to Join Form

Print Name: _____

Print Address: _____

City, State, and ZIP: _____

Telephone Number(s):    Home: _____

                                      Work: _____

                                      Cell: _____

E-mail Address: _____

*To be valid, please return via email, facsimile, or mailed and postmarked by* **xx, 2019** *to:*

Debra A. Nichols, Paralegal | Sommers Schwartz, PC
One Towne Square, Suite, 1700 | Southfield, MI 48076
Fax: 248-936-2174 | Email:  FLSA@sommerspc.com

2