# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:19-CV-0041-KDB-DBK

| | |
|---|---|
| **DANIEL DANFORD, individually and on behalf of all other similarly situated individuals,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**LOWE'S COMPANIES, INC. and LOWE'S HOME CENTERS, LLC,**<br><br>**Defendants.** | <u>**ORDER**</u> |

**THIS MATTER** is before the Court on Defendants Lowe's Companies, Inc. and Lowe's Home Centers, LLC (collectively "Lowe's") Motion to Compel Arbitration. (Doc. No. 191). This case is a putative class action suit under the Fair Labor Standards Act ("FLSA"), in which Plaintiffs allege that Defendants failed to pay certain hourly managers for all time worked in violation of FLSA and various state laws. Defendants move to compel 94 of the 3,896 individuals who have opted into the case as Plaintiffs (the "94 Opt-In Plaintiffs") to arbitration based on the arbitration provisions in the employment or promotion offers that Lowe's made to them. Having carefully reviewed and considered the motion and the parties' written arguments, the Court finds for the reasons set forth below that the 94 Opt-In Plaintiffs agreed to accept the employment terms offered to them, including the provision requiring arbitration of the claims made in this action, by working in the offered positions and thus the Court is bound to compel arbitration of their claims. Accordingly, the Court will **GRANT** Defendants' Motion to Compel Arbitration and dismiss the 94 Opt-In Plaintiffs from this action.

1

## I. FACTS AND PROCEDURAL HISTORY

Lowe's is a retail company specializing in home improvement. Headquartered in Mooresville, North Carolina, Lowe's operates a chain of retail stores in the United States and Canada. (Doc. No. 17, at 1). As of February 2018, Lowe's and their related businesses operate more than 2,390 home improvement and hardware stores and employ over 310,000 people in North America. (*Id.*).

Lowe's employs non-exempt hourly managers, including Department Managers, Service Managers, and Support Managers (hereinafter collectively referred to as "Hourly Managers"), to supervise and oversee the retail stores, or various departments within the retail stores, and to manage the retail stores' employees. (Doc. No. 17, at 2). Hourly Managers are required to work a full-time schedule, with occasional overtime; however, the Plaintiffs allege that the Hourly Managers were not compensated for all the hours worked during their shifts. (*Id.*). Specifically, they allege that the Hourly Managers were required to perform work tasks before and after their scheduled shifts and during their unpaid meal periods, when they are not clocked into the Defendant's timekeeping system. (*Id.*). Plaintiffs argue that much of this time qualifies as overtime within the meaning of applicable federal and state laws; therefore, Plaintiffs and Hourly Managers are owed overtime pay (as well as damages, injunctive relief, penalties, attorneys' fees and costs) related to this alleged uncompensated, off-the-clock work. (*Id.* at 2-3).

On October 2, 2019, this Court conditionally certified the FLSA collective class, approved a notice to potential opt-ins, and set up an opt-in deadline. (Doc. No. 191-1, at 1). Of the 3,896 individuals who filed opt-in forms and thereby joined this lawsuit as plaintiffs, Lowe's identified 1,075 opt-ins who were allegedly bound by arbitration agreements. (*Id.*). Of those opt-ins, 945 conceded that they are subject to arbitration and thus consented to their dismissal from the case.

(*Id.* at 2). Thus, there remain 94 opt-in Plaintiffs who Lowe's claims are bound by arbitration agreements who have objected to arbitration. (*Id*. at 3).

Each of the 94 Opt-In Plaintiffs received an offer letter from Lowe's. (*Id.*). The letters were provided via an electronic portal, which sent an email notification to the individual's email address, which was provided to Lowe's by the employee during the job application process. (*Id.* at 14). Each letter contained an explicit arbitration provision. The arbitration clauses state, in nearly identical form, in each of the 94 employment agreements at issue:

> In exchange for the mutual promises in this Agreement, Lowe's offer of employment, and your acceptance of employment by Lowe's . . . you and Lowe's agree that any controversy between you and Lowe's . . . arising out of your employment or the termination of your employment shall be settled by binding arbitration.

*See, e.g.*, Doc. No. 191-2, at 14.

Additionally, the agreement to arbitrate specifically provides that its scope includes any disputes under "the Fair Labor Standards Act . . . and any similar federal, state and local laws" and that "THIS AGREEMENT TO ARBITRATE DISPUTES MEANS THAT, EXCEPT AS PROVIDED HEREIN, THERE WILL BE NO COURT OR JURY TRIAL OF DISPUTES BETWEEN YOU AND LOWE'S WHICH ARISE OUT OF YOUR EMPLOYMENT." (*Id*. at 14-15) (emphasis in original).

Plaintiffs do not dispute having had notice of these written offers or their contents, nor do they dispute that each of them started working in the offered position. (Doc. No. 193, at 10). However, the 94 Opt-In Plaintiffs assert that they are not obligated to arbitrate their claims, arguing that Lowe's lacked physical or electronic signatures which they claim call into question whether or not the individuals truly agreed to arbitrate their employment claims against Lowe's. Now before the Court is Lowe's motion to compel the 94 Opt-In Plaintiffs to arbitrate their claims and dismiss them from the litigation.

3

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") represents "a liberal federal policy favoring arbitration agreements" and applies "to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Under Section 2 of the FAA, a written provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). Furthermore, the Supreme Court has held that "courts must rigorously enforce arbitration agreements according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) a relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute. *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016); *see also Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015). Agreements to arbitrate are construed according to ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2011). Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000).

### III. DISCUSSION

Lowe's contends that the only difference between the group of 945 former opt-ins who have already conceded that they must arbitrate and the 94 Opt-In Plaintiffs is that all but a relative few[1] accepted the arbitration agreement by accepting and performing their jobs rather than signing their offer letters.[2] The 94 Opt-In Plaintiffs argue that because they did not sign the offer letters, they did not agree to be bound by the arbitration agreement. Because there is no dispute as to material facts concerning the circumstances related to the receipt of the offer letters or their contents, there is no need for a fact-finder to decide any facts related to the formation of the employment agreement. (*See* Doc. No. 193, at 6). Rather, the issue before the Court is whether or not the 94 Opt-In Plaintiffs agreed to arbitrate their claims as a matter of law even in the absence of signing their offer letters.

To determine whether the 94 Opt-In Plaintiffs agreed to arbitrate, the Court must look to state law for each opt-in. *See Lorenzo v. Prime Commc'ns*, L.P., 806 F.3d 777, 781 (4th Cir. 2015) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)) ("[A] court may order arbitration only when it 'is satisfied that the parties agreed to arbitrate.' And the question of whether the parties agreed to arbitrate is resolved by application of state contract law.").

---

[1] Lowe's has alleged that 15 out of the 94 Opt-In Plaintiffs actually did electronically sign their offer letters. (Doc. No. 191-1, at 15). Because the Court finds that each of the 94 Opt-In Plaintiffs are bound by the arbitration provisions in their offer letters based on acceptance of the terms of employment by taking and performing their offered jobs, the Court need not reach the parties' dispute concerning the timeliness of Lowe's disclosure of the electronically signed offers.

[2] Indeed, three of the 94 Opt-In Plaintiffs have filed an arbitration demand "pursuant to the Agreement to Arbitrate Disputes clause encompassed within Respondent Lowe's Home Centers, LLC's Internal Offer Letter[s]." (Doc. No. 193, at 8). By willingly submit[ing] these clearly arbitrable claims to arbitration," these Plaintiffs "without a doubt [have] waived any right [they] may have had to contest the agreement to arbitrate." *Owen-Williams v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 907 F. Supp. 134, 137 (D. Md. 1995), *aff'd*, 103 F.3d 119 (4th Cir. 1996).

### A. Agreement to Arbitrate

The Court has carefully reviewed the documents submitted by both parties analyzing the contract law of each potentially relevant state. (*See* Doc. No. 191-1; Doc. No. 192; Doc. No. 193). Through that review, the Court has determined that there is no meaningful difference among the relevant states on the primary issue – each of the states holds that no signature is required for an arbitration or other contractual provision to be binding if the party sought to be bound otherwise accepted the agreement. *See, e.g.*, *Am.'s Home Place, Inc. v. Rampey*, 166 So. 3d 655, 659 (Ala. 2014) ("It is axiomatic that parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated."); *Pinto v. USAA Ins. Agency Inc. of Tex. (FN)*, 275 F. Supp. 3d 1165, 1168 (D. Ariz. 2017) (stating that "a party's signature is not necessary to bind him to arbitration if he was aware of the provision and it was in writing"); *E-21 Eng'g, Inc. v. Steve Stock & Assocs., Inc.*, 252 P.3d 36, 39 (Colo. App. 2010) ("Parties may enter into an enforceable agreement to arbitrate notwithstanding the absence of their signatures."); *Int'l Creative Mgmt., Inc. v. D&R Entm't Co.,* 670 N.E.2d 1305, 1312 (Ind. Ct. App. 1996) (stating that "the validity of a contract is not dependent upon the signature of the parties").

Further, the relevant state law holds that a contract can be accepted through performance, such as continuing employment. *See, e.g.*, *Lumuenemo v. Citigroup, Inc.* No. 08-CV-00830, 2009 WL 371901, at *4 (D. Colo. Feb. 12, 2009) (finding that "the Plaintiff manifested her agreement to Defendant's decision to make the arbitration agreement binding by agreeing to employment with knowledge of this condition"); *Curry v. MidAmerica Care Found.*, No. TH 02-0053-C T/H, 2002 WL 1821808, at *5 (S.D. Ind. June 4, 2002) (stating that when arbitration is a "condition of her employment," an individual "accept[s] the arbitration agreement by accepting employment"); *Brookins v. Superior Mgmt. Grp., Inc.*, No. 13-2051-EFM-JPO, 2013 WL 5819706, at *2 (D. Kan.

6

Oct. 29, 2013) ("[C]ontinued employment after being made aware of an arbitration policy constitutes acceptance by performance"); *Tilt-Up Concrete, Inc. v. Star City/Fed., Inc.*, 582 N.W.2d 604, 611 (Neb. 1998) ("Acceptance of an offer may be illustrated by words, conduct, or acquiescence indicating agreement and may be indicated by the silence and inaction of an offeree."); *Kalled v. Albee*, 712 A.2d 616, 617 (N.H. 1998) (stating that a "party may accept a contract by performance or conduct").

Finally, each state's law holds that a mutual promise to arbitrate or continued employment is sufficient consideration for the arbitration agreement. *See, e.g.*, *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1008 (9th Cir. 2002) (stating that both continued employment and a mutual promise to arbitrate are sufficient consideration); *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1312-12 (S.D. Fla. 2009) ("Mutually binding promises to arbitrate provide consideration for one another, and give rise to an enforceable arbitration agreement," as do "promises of continued employment and . . . pay and benefits provided."); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1374 (11th Cir. 2005) (holding that a mutual promise to arbitrate is adequate consideration for an arbitration agreement); *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 438-39 (Mo. Ct. App. 2010) (stating that a mutual agreement to arbitrate satisfies the requirement for consideration).

In response to this black letter state contract law, the 94 Opt-In Plaintiffs argue that merely "continuing employment" fails to constitute acceptance. (*See* Doc. No. 192, at 10). Whatever the merits of this argument in light of the state law discussed above, movants' argument does not fully capture the nature of the employment offers made to them. The 94 Opt-In Plaintiffs were indisputably not merely "continuing employment" with Lowe's in the same position at the same rate of pay. Instead, the opt-ins were either accepting their first position with the company or

7

switching into a new role with the company. (*See* Doc. No. 191-1, at 15). By accepting their new role with Lowe's, the 94 Opt-In Plaintiffs assented to the arbitration agreement through their performance of their new jobs, despite not having signed the offer of employment. Therefore, Plaintiffs cannot avoid the arbitration provision contained as a prominent term of their accepted offers.[3]

Further, the Court finds that the arbitration clauses satisfy the elements to be enforceable under the FAA. *See Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016); *see also Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc*., 807 F.3d 553, 563 (4th Cir. 2015). First, Lowe's has shown that there is a dispute between the parties, as the 94 Opt-In Plaintiffs brought a claim against Lowe's based on alleged wage-and-hour violations, which Lowe's denies. (*See* Doc. No. 191). Second, the agreements are written and broadly cover "any controversy . . . arising out of [plaintiffs] employment," which explicitly includes disputes under "the [FLSA] . . . and any similar federal, state and local laws." *See, e.g.*, Doc. No. 191-2; *see also Johnson v. Carmax, Inc.*, No. 3:10-CV-213, 2010 WL 2802478, at *3 (E.D. Va. July 14, 2010) (compelling FLSA claim to arbitration where agreement specifically covered such claims along with "any and all employment-related legal disputes . . . arising out of . . . employment"). Third, the 94 Opt-In Plaintiffs have alleged that Lowe's "engage[s] in interstate commerce or in the production of goods for commerce". (*See* Doc. No. 17, at 4). Fourth, the 94 Opt-In Plaintiffs have refused to voluntarily dismiss their claims in favor of arbitration.

---

[3] Moreover, the fact that the Plaintiffs include a cause of action for "breach of contract" undermines their argument that arbitration should not be compelled. (Doc. No. 191-1, at 21). To sue for breach of contract, the Plaintiffs necessarily must admit the validity of the employment contract and the terms therein; Plaintiffs cannot claim both that they are entitled to enforce the contract and they did not enter into it in the first place.

8

### B. Dismissal of the 94 Opt-In Plaintiffs

Lowe's requests that the Court dismiss the 94 Opt-In Plaintiff from the suit because all their claims are arbitrable, rather than stay the proceeding. (*See* Doc. No. 191-1, at 35). "Whether the parties have agreed to arbitrate their disputes is a jurisdictional question," and where all of the claims at issue in a lawsuit are arbitrable, the court may dismiss the lawsuit (or certain parties to an action) for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC*, 792 F. Supp. 2d 897, 900 (E.D.N.C. 2011); *see also Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emp. v. Norfolk S. Ry. Co.*, 143 F.2d 1015, 1017 (4th Cir. 1944) ("Arbitration deprives the judiciary of jurisdiction over the particular controversy and the courts have long ruled that there must be strict adherence to the essential terms of the agreements to arbitrate."); *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). As all of the 94 Opt-In Plaintiffs' claims are arbitrable, these opt-in Plaintiffs will be dismissed from this case.

### IV. CONCLUSION

Based on the above, the 94 Opt-In Plaintiffs have failed to show that they did not assent to the agreement to arbitrate. The state law in each of the opt-ins' respective states holds that there need not be a signature in order for the arbitration provision to be binding. Further, the opt-ins accepted the terms of their employment offers by accepting and performing their new jobs at Lowe's. Therefore, the 94 Opt-In Plaintiffs must arbitrate their claims and will be dismissed from this suit.

9

## V. ORDER

Lowe's Motion to Compel Arbitration and For Dismissal of 94 Opt-In Plaintiffs' Claims, (Doc. No. 191), is **GRANTED**. The 94 Opt-In Plaintiffs shall arbitrate their claims as provided in their employment offers and are hereby dismissed from this lawsuit.

**SO ORDERED.**

Signed: July 10, 2020

Kenneth D. Bell
United States District Judge