**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No. 5:19-cv-0041-KDB-DCK**

| | |
|---|---|
| **DANIEL DANFORD, individually and on behalf of all other similarly situated individuals,** ) ) ) ) | |
| **Plaintiff,** ) ) | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEPOSITION** |
| v. ) ) | **PURSUANT TO FED. R. CIV. P. 37 AND FOR PROTECTIVE ORDER** |
| **LOWE'S COMPANIES, INC. and LOWE'S HOME CENTERS, LLC,** ) ) ) | **PURSUANT TO FED. R. CIV. P. 26** |
| **Defendants.** ) | |

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 2

    I.    Plaintiffs' Counsel File This Suit And 18 Other Nearly-Identical Wage-And-Hour Actions In Federal District Courts Across The Country. ..................... 2

    II.    The Parties Disagree On The Scheduling And Scope Of Lowe's Rule 30(b)(6) Deposition. ............................................................................................ 3

    III.    The Parties Establish a Process For Selecting 300 Opt-In Plaintiffs For Written Discovery. ................................................................................................ 4

    IV.    The Parties Continue To Meet And Confer And Plaintiffs File This Motion. ................................................................................................................. 5

ARGUMENT ....................................................................................................................... 7

    I.    Plaintiffs' Motion To Compel The Rule 30(b)(6) Deposition Is Procedurally Improper And Unnecessary. .............................................................. 7

        A.    The Parties Were Still Engaged In A Meet-And-Confer Process When Plaintiffs Filed Their Motion. ........................................................... 7

        B.    The Topics For Any Rule 30(b)(6) Deposition Remain Unresolved. ....... 10

        C.    Given The Upcoming Decision Expected From The MDL Panel, It Would Be Inefficient To Proceed With The Rule 30(b)(6) Deposition Now. ............................................................................................ 11

        D.    Plaintiffs Still Have Failed To Identify Any Reason Why They Must Take The Rule 30(b)(6) Deposition Before September 2020. ......... 12

    II.    Plaintiffs Have Set Forth No Viable Basis For A Protective Order With Respect to Lowe's Discovery Requests. ............................................................ 13

CONCLUSION ................................................................................................................. 15

# INTRODUCTION

With their motion, Plaintiffs seek to inject this Court into a scheduling dispute that was, until now, the subject of good-faith negotiations between the parties. Indeed, defense counsel offered to meet and confer with Plaintiffs' counsel regarding the subject-matter of Plaintiffs' motion the very morning that Plaintiffs filed their motion. Despite certifying in their motion that they attempted in good faith to resolve the disputes under Local Rule 7.1, Plaintiffs did not respond to defense counsel's invitation. Instead, they instigated unnecessary motion practice.

Not only was Plaintiffs' motion premature, but it is also meritless. They ask the Court to order a Rule 30(b)(6) deposition to be held within 14 days of the Court's decision on their motion, complaining that holding the deposition in September—as Lowe's had suggested—would unfairly prejudice them. But, underscoring the prematurity of their request, Plaintiffs have not even taken the simple step of serving a deposition notice setting an August date for deposition. Nor, contrary to Plaintiffs' claims, have the parties agreed on the scope of the topics for the deposition. In any event, Plaintiffs provide no support for their claim that there is an urgent need to hold the deposition before September, which is seven months before the May 3, 2021 fact discovery deadline in this case. On the other hand, Lowe's has provided a compelling reason to wait until September: By then, the U.S. Judicial Panel on Multidistrict Litigation ("MDL Panel") likely will have decided Lowe's pending motion to transfer 18 copycat wage-and-hour actions that Plaintiffs' counsel have filed into an MDL before this Court (the "MDL Motion"). And the MDL Panel's decision will necessarily and directly affect the scope of the Rule 30(b)(6) deposition in this case.

Plaintiffs' request for a protective order is equally infirm. At bottom, their grievance is that it is unfair to wait until September to conduct the Rule 30(b)(6) deposition while requiring opt-in plaintiffs to answer written discovery in the interim. But as Plaintiffs' own case-law demonstrates, discovery is not a tit-for-tat game. *See Jayne H. Lee, Inc. v. Flagstaff Indus.*, 173

F.R.D. 651, 657 (D. Md. 1997); *see* Mot. at 11 (citing case). The 300 opt-in plaintiffs were selected pursuant to an agreed-upon randomized method and, unlike the Rule 30(b)(6) deposition, there is no reason that written discovery with respect to them should wait. Irrespective of the outcome of the MDL Motion, these 300 plaintiffs will need to respond to written discovery in this case, and the scope of the discovery sought from them will not change regardless of whether this case is consolidated into an MDL. For these reasons, and those explained in further detail below, the Court should reject Plaintiffs' motion in its entirety.

## FACTUAL BACKGROUND

**I.     Plaintiffs' Counsel File This Suit And 18 Other Nearly-Identical Wage-And-Hour Actions In Federal District Courts Across The Country.**

On April 11, 2019, Plaintiffs Daniel Danford and Harry Houtman filed this lawsuit against Lowe's Companies, Inc. and Lowe's Home Centers, LLC (together, "Lowe's"), seeking to represent a nationwide collective under the FLSA, among other claims. Dkt. 1; *see also* Dkt. 17 (First Amended Complaint). On October 2, 2019, the Court conditionally certified the FLSA collective and authorized notice by mail to potential opt-in plaintiffs. *See* Dkt. 50. All told, 3,888 individuals now have opted into the conditionally certified FLSA collective. Dkt. 194.[1]

On January 15, 2020, the Court issued an Amended Pretrial Order and Case Management Plan, which set a deadline of February 1, 2021 for the completion of fact discovery. Dkt. 153. On February 14, 2020, Plaintiffs' counsel served a Rule 30(b)(6) deposition notice on Lowe's previous attorneys at Moore & Van Allen PLLC, noticing a Rule 30(b)(6) deposition for April 2, 2020. *See* Dkt. 195-2. The parties subsequently agreed to adjourn that date, and scheduled Rule 30(b)(6) depositions for April 15 and April 20. *See* Dkt. 195-9 at 2. But on April 6, as it became plain that

---

[1] 1,039 of those individuals subsequently were dismissed from the action because they agreed to arbitrate their claims. *See* Dkts. 185, 186 (dismissing 945 by consent); Dkt. 194 (granting Lowe's motion to compel arbitration and dismiss an additional 94 opt-in plaintiffs).

2

the COVID-19 pandemic would complicate discovery, the parties agreed to further adjourn the Rule 30(b)(6) deposition. Dkt. 195-7 at 4-5. While Plaintiffs' counsel proposed that the deposition be held in "mid[-]June," the parties never reached agreement on a date in June for the deposition. *See id*. In further response to the difficulties created by COVID-19, on April 16, the parties filed a stipulated motion to extend all deadlines in this case by 90 days. Dkt. 169. The Court granted the motion, setting a May 3, 2021 deadline for the close of fact discovery. Dkt. 170.

Meanwhile, between March 12 and April 23, 2020, Plaintiffs' counsel filed 18 nearly-identical wage-and-hour actions against Lowe's in federal district courts across the country (the "*Danford*-Related Actions"), all of which parroted nearly verbatim the allegations from the operative complaint in this suit. *See* Dkt. 190. On April 21, 2020, the undersigned attorneys from Gibson, Dunn & Crutcher LLP filed *pro hac vice* motions to appear in this matter, which were granted the next day. Dkts. 172, 174, 175, 178–79, 182. On May 11, 2020, on behalf of Lowe's, the undersigned counsel filed a motion before the MDL Panel to establish an MDL for *Danford* and the *Danford*-Related Actions before this Court. *See* Dkt. 190. The Panel heard argument on that motion on July 30, 2020, and typically issues its decisions within a few weeks of argument. *See* Ex. A, Declaration of Molly Senger ¶¶ 5–6 ("Senger Decl.").

II. **The Parties Disagree On The Scheduling And Scope Of Lowe's Rule 30(b)(6) Deposition.**

On May 27, undersigned counsel sent a letter to Plaintiffs' counsel, informing them of Lowe's general and specific objections to the 13 topics outlined in Plaintiffs' Rule 30(b)(6) deposition notice and inviting Plaintiffs' counsel to meet and confer to resolve any areas of disagreement regarding the appropriate topics for the deposition. Dkt. 195-8. The letter also informed Plaintiffs' counsel that, in light of the pending MDL Motion and the ongoing COVID-19 pandemic, among other reasons, Lowe's could not agree to conduct the Rule 30(b)(6)

3

deposition in June.  *Id.* at 2.  In a June 2 response, Plaintiffs' counsel acknowledged the difficulties of preparing witnesses for depositions during the COVID-19 pandemic, but nevertheless insisted that it was "critical to get the 30(b)(6) deposition concluded" in June in light of the "relatively short" period of *11 months* then remaining for fact discovery.  Dkt. 195-9 at 3–4.

Defense counsel replied on June 9, reiterating the difficulty of preparing for and conducting a Rule 30(b)(6) deposition in June in light of the pandemic.  Dkt. 195-10.  Defense counsel also highlighted the length of time remaining to complete fact discovery, the parties' lack of agreement on the topics to be covered at the Rule 30(b)(6) deposition, and the likely need for subsequent, duplicative depositions in the *Danford*-Related Actions if the Rule 30(b)(6) deposition were to be completed before the resolution of Lowe's MDL Motion.  *Id.*  In light of these considerations, defense counsel proposed that the Rule 30(b)(6) deposition be conducted in September 2020, after the MDL Panel's ruling.  *Id.* at 4.  In the interim, defense counsel proposed that the parties meet and confer to finalize the topics for the Rule 30(b)(6) deposition.  *Id.* at 3.  The June 9 letter also expressed Lowe's hope that the parties could resolve their scheduling disagreement without burdening the Court, but in the absence of an agreement, proposed that the parties seek to conduct a telephonic status conference with the Court to attempt to resolve the issue, consistent with local practice.  *Id.* at 4.  Notwithstanding their claimed urgency, Plaintiffs' counsel never responded to the June 9 letter.  Their next correspondence was not until July 6, almost a month later, in response to a July 2 email from Lowe's counsel.  *See* Senger Decl. ¶ 10, Ex. 3.  Plaintiffs never responded to the suggestion that the parties jointly request a telephone conference with the Court to address any issues they were not able to cooperatively resolve.

### III. The Parties Establish a Process For Selecting 300 Opt-In Plaintiffs For Written Discovery.

In its January 15, 2020 Amended Pretrial Order and Case Management Plan, the Court

ordered that Lowe's may propound interrogatories, requests for production, and requests for admission on "three-hundred (300) randomly selected opt-in plaintiffs" from Lowe's "fifteen (15) established regions." Dkt. 153 at 5–6. Consistent with that directive, Lowe's then-defense counsel sent a letter to Plaintiffs' counsel on March 2, 2020, outlining a proposed random-sampling methodology to select the 300 opt-ins. *See* Senger Decl. ¶ 8, Ex. 1. As explained in the March 2 letter, that methodology uses Stata statistical software to randomly select opt-in plaintiffs within each of the 15 Lowe's regions, excluding opt-ins who were potentially subject to arbitration. *See id.*, Ex. 1 at 1–3; Ex. B, Declaration of Nathan Woods ¶¶ 4–5, 9–10 ("Woods Decl.").

On July 2, Lowe's served interrogatories, requests for production of documents, and requests for admission on the 300 opt-in plaintiffs selected pursuant to the method described in the March 2 letter. Senger Decl. ¶ 9, Ex. 2. On July 6, Plaintiffs' counsel sent a letter to defense counsel, asserting that they did "not intend to answer the discovery" served on the 300 opt-in plaintiffs because "the parties are still engaged in an ongoing meet and confer on discovery process," which "include[s] selecting which opt ins will be subjected to discovery." *Id.*, Ex. 3 at 1–2. In that same letter, Plaintiffs' counsel also said that they "expect[ed] to work out deposition dates for the long overdue Rule 30(b)(6) deposition that remains incomplete." *Id.* at 2.

**IV.    The Parties Continue To Meet And Confer And Plaintiffs File This Motion.**

In an attempt to resolve their disputes regarding opt-in plaintiff discovery and the Rule 30(b)(6) deposition, the parties held a meet and confer via Zoom on July 13, 2020. *See* Senger Decl. ¶¶ 11–16. During that meeting, defense counsel reiterated that the Rule 30(b)(6) deposition should not proceed until September 2020, both because the parties had not yet agreed on the scope of the topics for the deposition and because it would be most efficient to conduct the deposition after the MDL Panel's decision on the MDL Motion. *Id.* ¶ 12, Ex. 4 at 3. With respect to opt-in plaintiff discovery, defense counsel explained that the random selection process used to identify

5

Case 5:19-cv-00041-KDB-DCK   Document 196   Filed 07/31/20   Page 7 of 19

the 300 opt-ins to be subject to discovery had conformed with the parties' correspondence on the subject, but that Lowe's would be pleased to provide additional data to Plaintiffs' counsel regarding the mechanics of the selection process, in order to allay any concerns that Plaintiffs' counsel may have regarding the randomized nature of the process (and to avoid the burden and expense of repeating the random selection and re-serving discovery on a newly-selected sample). *Id.* ¶ 13, Ex. 4 at 2. Defense counsel also made clear that Lowe's was willing to extend Plaintiffs' deadline to respond to written discovery to provide adequate time for Plaintiffs' counsel to satisfy themselves as to the randomized nature of the sample. *Id.* ¶ 14. Nevertheless, Plaintiffs' counsel indicated that Plaintiffs likely would file a motion to compel the Rule 30(b)(6) deposition and/or for a protective order with respect to opt-in discovery. *Id.* ¶ 16, Ex. 4 at 2–3.

Following the meet and confer, defense counsel suggested by email that the parties have another teleconference after Plaintiffs' counsel received the additional data regarding the selection process for the random sample. *Id.*, Ex. 4 at 3. Three days later, Plaintiffs' counsel wrote back, noting that while additional information regarding the sampling "may" be adequate to alleviate their concerns about the composition of the sample, they nonetheless intended to file a motion to compel the Rule 30(b)(6) deposition. *Id.* at 2–3. Defense counsel responded, noting that Plaintiffs' counsel still had not explained "the supposed urgency in taking a 30(b)(6) deposition(s) when the discovery deadline in this case is May 2021" and when the parties "have not yet agreed on the scope of the 30(b)(6) topics." *Id.* at 1. Defense counsel also reiterated that it would be most efficient to postpone the Rule 30(b)(6) deposition(s) until after the MDL Panel resolves the MDL Motion. *Id.* Finally, defense counsel made clear that they remained available to "meet and confer further in an attempt to avoid troubling the Court with this scheduling issue." *Id.* Plaintiffs' counsel did not respond, instead filing the present motion later the same day. *Id.* ¶¶ 18–19.

## ARGUMENT

Plaintiffs ask the Court to compel Lowe's to produce a witness for a Rule 30(b)(6) deposition even though: (1) there is no noticed deposition date; (2) the parties have not agreed on the scope of the Rule 30(b)(6) topics (or briefed their points of disagreement for the Court); (3) the MDL Panel heard Lowe's MDL Motion on July 30; and (4) fact discovery in this case is not slated to close for 9 months. Plaintiffs also attempt to have it both ways, asking the Court to compel Lowe's to produce a Rule 30(b)(6) witness while at the same time issuing a protective order such that they need not respond to Lowe's written discovery. But—unlike the Rule 30(b)(6) deposition—there is no reason why written discovery on the 300 randomly-selected opt-in plaintiffs should not proceed, as the scope of the discovery on these plaintiffs' claims will not be altered based on the outcome of the MDL Motion. Regrettably, Plaintiffs' counsel has ignored defense counsel's attempts to continue the meet-and-confer process with respect to these issues, instead choosing to involve the Court in what is, at bottom, a scheduling dispute. The Court should not condone Plaintiffs' attempt to circumvent the meet-and-confer process required by Local Rule 7.1 and this Court's Pretrial Order and Case Management Plan in this manner.

### I. Plaintiffs' Motion To Compel The Rule 30(b)(6) Deposition Is Procedurally Improper And Unnecessary.

#### A. The Parties Were Still Engaged In A Meet-And-Confer Process When Plaintiffs Filed Their Motion.

Plaintiffs contend that "an order is now needed" to compel Lowe's to produce a Rule 30(b)(6) witness. Mot. at 6. But the actual history of the parties' communications to date reveals that they were, in fact, still engaged in meet-and-confer discussions regarding the timing and scope of the Rule 30(b)(6) deposition when Plaintiffs preemptively filed this motion.

In their June 9 letter, defense counsel explained that the Rule 30(b)(6) deposition should not go forward in June in light of the difficulty inherent in adequately preparing a Rule 30(b)(6)

7

Case 5:19-cv-00041-KDB-DCK   Document 196   Filed 07/31/20   Page 9 of 19

witness and conducting such a deposition during the COVID-19 pandemic, the potential need for duplicative depositions if the deposition were to be held prior to the MDL Panel's decision, and—most fundamentally—because there were unresolved disputes over the proper scope of the noticed deposition topics. Dkt. 195-10. Plaintiffs did not raise the issue again until **_almost a month later_**, in a July 6 letter responding to an email about the service of discovery requests. Senger Decl. ¶ 10, Ex. 3. Presumably, if there were some genuine urgency necessitating that Plaintiffs take the Rule 30(b)(6) deposition in mid-June—as Plaintiffs' counsel contends—they would not have waited until July to raise the issue again. In fact, in their July 6 letter, Plaintiffs' counsel did not even mention the June 9 letter, let alone address any of Lowe's substantive points as to why the Rule 30(b)(6) deposition should be deferred until September. Instead, Plaintiffs' counsel simply asserted without explanation that they "expect[ed] to work out deposition dates." *Id.*, Ex. 3 at 2.

When the parties held a meet and confer a week later, defense counsel again explained the reasons underlying their position that the Rule 30(b)(6) deposition should be held in September. *See id.* ¶ 12, Ex. 4 at 3. Rather than use the conference productively to discuss, for example, the scope of the noticed deposition topics or the impact of the MDL Motion on the Rule 30(b)(6) deposition, Plaintiffs' counsel flatly asserted that either the Rule 30(b)(6) deposition and written discovery on the opt-in plaintiffs should both move forward or neither should proceed. *Id.* ¶ 16, Ex. 4 at 3. After the meet and confer, defense counsel repeatedly proposed in writing that the parties continue to discuss their points of disagreement regarding the Rule 30(b)(6) deposition; however, Plaintiffs' counsel rejected these opportunities to resolve the parties' dispute, instead filing this motion. *Id.* ¶¶ 17–19, Ex. 4 at 1–3.

The parties' communications illustrate that they were engaged in a meet-and-confer process regarding the Rule 30(b)(6) deposition when Plaintiffs chose to cut that process short.

Now, Plaintiffs ask the Court to *order* that the Rule 30(b)(6) deposition take place sometime in August, as opposed to Lowe's original suggestion: September. At the same time, Plaintiffs have not even bothered to serve Lowe's with a revised Rule 30(b)(6) deposition notice since February. The fact that there is no deposition noticed for *any* time prior to September (or at all) underscores the premature nature of Plaintiffs' motion. *See, e.g.*, *DeepGulf, Inc. v. Moszkowski*, 330 F.R.D. 600, 606 (N.D. Fla. 2019) ("Before a party can move to compel a deposition, it first must show that it served notice of the deposition on the opposing party and that the opposing party failed to attend."); *Nuskey v. Lambright*, 251 F.R.D. 3, 12 (D.D.C. 2008) (defendant's employee could not be compelled to attend deposition "until she fail[ed] to appear after being served a 'reasonable written notice . . . stat[ing] the time and place of the deposition'" (quoting Fed. R. Civ. P. 30(b)(1)).

Plaintiffs' failure to serve any amended deposition notice—and the parties' lack of an agreement regarding a deposition date, much less topics—is also fatal to Plaintiffs' cursory claim that the Court should order sanctions against Lowe's for failure to appear at a scheduled deposition. Mot. at 6. Sanctions are only permitted where (in addition to other requirements) "a person designated under Rule 30(b)(6) . . . fails, ***after being served with proper notice***, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i) (emphasis added). Again, Plaintiffs' only deposition notice provided an April 2 deposition date. *See* Dkt. 195-2 at 3. There is no dispute that the parties twice agreed to adjourn that date, and never reached agreement on any new date. *See* Dkt. 195-7 at 4 (reflecting adjournment of deposition date and Plaintiffs' counsel request to set "dates for the 30(b)(6) depositions in mid[-]June"). Because Plaintiffs have not served any revised deposition notice with a new date, location, or method of recording testimony, there has been no properly-noticed deposition for which any Lowe's Rule 30(b)(6) deponent has failed to appear. *See Channing v. Equifax, Inc.*, No. 5:11-CV-00293-FL, 2012 WL 1204900, at *2

(E.D.N.C. Apr. 11, 2012) ("Proper notice requires 'reasonable written notice . . . stat[ing] the time and place of the deposition' and the method for recording testimony." (quoting Fed. R. Civ. P. 30(b)(1), (3)(A))). Like their attempt to compel a deposition date, then, Plaintiffs' request for sanctions is both substantively meritless and premature.

### B. The Topics For Any Rule 30(b)(6) Deposition Remain Unresolved.

Plaintiffs assert that "the Parties successfully negotiated the topics . . . for the Rule 30(b)(6) depositions." Mot. at 2. But despite their repeated insistence that the parties have reached a supposed agreement on the scope of the noticed topics, Plaintiffs have failed to provide Defendants' counsel with the substance of any purported agreement.

As Lowe's made clear in its May 27 letter, the topics listed in the February notice are objectionable on several grounds: Certain topics seek privileged and attorney work-product information, while others are overbroad or unduly burdensome. *See* Dkt. 195-8. For example, Plaintiffs seek to depose a Lowe's representative regarding the impossibly broad category of "all electronic or other (i.e. paper) databases relative to" personnel records and "[e]mail systems." *Id.* at 6. They also desire testimony regarding "[a]ny steps taken by Lowe's to determine whether their payroll practices as they relate to Hourly Managers are in compliance with the [FLSA] and/or the state law of any states where Hourly Managers are employed"—necessarily implicating privileged information. *Id.* at 12. And multiple requests seek testimony from Lowe's regarding the identities of "all employees and agents" or "any individuals" familiar with Lowe's wage policies across large swaths of Lowe's business. *Id.* at 5, 10. As part of the parties' ongoing good-faith efforts to meet and confer regarding discovery, Lowe's has sought to reach an agreement with Plaintiffs about ways in which to reasonably narrow the scope of the objectionable topics. Rather than engaging in that process to resolve the parties' differences where possible and narrow any areas on which they remain deadlocked, Plaintiffs seek to circumvent the meet-and-confer process

10

and would have this Court wade into questions regarding the appropriate scope of testimony that are not yet even fully crystalized, much less adequately briefed.[2]

  **C. Given The Upcoming Decision Expected From The MDL Panel, It Would Be Inefficient To Proceed With The Rule 30(b)(6) Deposition Now.**

Plaintiffs insist that "the pendency of Defendants' MDL motion has no bearing on the Rule 30(b)(6) deposition." Mot. at 7. Not so.

The chief purpose of MDL centralization is "to promote convenience and efficiency." *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, No. CIV.A. DKC 09-0100, 2011 WL 6000562, at *2 (D. Md. Nov. 29, 2011); *see also* 28 U.S.C. § 1407(a) (actions should be transferred to an MDL where doing so will "promote the just and efficient conduct of such actions"). Consistent with this efficiency principle, MDL centralization is intended to avoid duplicative or overlapping depositions. *See, e.g.*, *In re: Pilot Flying J Fuel Rebate Contract Litig. (No. II)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) (centralization in MDL proper in part because it would "avoid repetitive depositions of [defendants'] officers and employees"); *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Practices & Prod. Liab. Litig.*, No. MDL 2936, 2020 WL 2848377, at *2 (J.P.M.L. June 2, 2020) (defendants' assertion that duplicative depositions already had been taken in two separate matters favored consolidation in MDL to avoid further inefficiencies).

The goal of efficiency counsels strongly in favor of conducting the Rule 30(b)(6) deposition in this case after the MDL Panel's ruling on the MDL Motion, which necessarily will impact the scope of the deposition. Notwithstanding Plaintiffs' counsel's assurance that they "will not conduct duplicative depositions," Mot. at 7, there is significant risk of overlapping or repetitive

---

[2] Given the objectionable scope of many of the proposed deposition topics, Lowe's reserves the right to file its own motion for a protective order to the extent that the parties cannot resolve their differences. For the same reason such a motion would be premature at this point, so too, is Plaintiffs' request that the Court strike Lowe's general objections. *See* Mot. at 11, 13.

depositions in the *Danford*-Related Actions if Lowe's is required to provide a Rule 30(b)(6) deponent in this case shortly before its MDL Motion is decided. Conversely, conducting the Rule 30(b)(6) deposition in this case *after* the MDL Panel's ruling will ensure that unnecessary resources are not expended on multiple, overlapping depositions. Waiting to conduct the Rule 30(b)(6) deposition until after the MDL Panel's ruling also will not materially impact the discovery schedule in this case. The MDL Panel heard the MDL Motion during its July 30 sitting, and its ruling is expected soon, while discovery in this case is not set to conclude until May 2021.

Plaintiffs cannot seriously contend that the benefits of avoiding the potential inefficiencies of multiple Rule 30(b)(6) depositions are outweighed by any urgent need to conduct the Rule 30(b)(6) deposition in this case in August as opposed to in the following month, September.

### D. Plaintiffs Still Have Failed To Identify Any Reason Why They Must Take The Rule 30(b)(6) Deposition Before September 2020.

Plaintiffs insist that they somehow will be prejudiced if the Court does not order the Rule 30(b)(6) deposition to take place within 14 days of deciding their motion. Mot. at 1, 9, 13. But despite their complaint that conducting the Rule 30(b)(6) deposition in September would be "fundamentally unfair," *id.* at 9, Plaintiffs fail to explain how holding the deposition a matter of weeks later than what they themselves request and approximately *seven months* before the close of fact discovery in May 2021 would cause them any harm.

Indeed, Plaintiffs' own conduct thus far undermines their claim of urgency. In April, when Plaintiffs asked that the Rule 30(b)(6) deposition be held in June, discovery was slated to conclude on February 1, 2021—roughly seven months after the (then-proposed) Rule 30(b)(6) deposition date. *See* Dkt. 153 at 2. Plaintiffs do not explain why that timeline previously was sufficient, but is now "fundamentally unfair." Moreover, despite the purportedly urgent need to take the Rule 30(b)(6) deposition in June, Plaintiffs' counsel waited until July to meet and confer with Lowe's

12

Case 5:19-cv-00041-KDB-DCK   Document 196   Filed 07/31/20   Page 14 of 19

counsel regarding the deposition, despite Lowe's having made clear in late May that it believed the deposition should not occur until September.  *See* Senger Decl. ¶¶ 11–12; Dkt. 195-8.  Plaintiffs' delay is inconsistent with their newfound insistence that the Court order the deposition to go forward in August.  The same is true of their decision to file a formal discovery motion that involves a three-week briefing schedule, instead of accepting the suggestion by Lowe's counsel to jointly request a telephone conference with the Court.  Given Plaintiffs' own delays and their failure to articulate any need to conduct the Rule 30(b)(6) deposition in August as opposed to September, they cannot simply assert without support that the modest difference in timing relative to the overall discovery period is somehow "fundamentally unfair."

In short, scheduling the Rule 30(b)(6) deposition for September—as Lowe's originally suggested in late May—would prevent the need for duplicative depositions, provide the parties with sufficient time to meet and confer regarding the scope of the noticed topics (or bring any disputes regarding the topics to the Court for resolution), and comport with a timeline that Plaintiffs themselves previously conceded was sufficient.  Plaintiffs' motion to compel should be denied.

## II. Plaintiffs Have Set Forth No Viable Basis For A Protective Order With Respect to Lowe's Discovery Requests.

Plaintiffs also have set forth no viable basis for the entry of a protective order with respect to the affirmative discovery that Lowe's served on the 300 randomly-selected opt-ins.

Plaintiffs' only argument as to why they should not be required to respond to Lowe's written discovery requests is that it would be supposedly "unfair" for Lowe's "to postpone the Rule 30(b)(6) deposition, but at the same time, serve interrogatories and request[s] to produce for 300 opt-in Plaintiffs."  Mot. at 10–11.  This argument—that, "in essence, 'two wrongs make a right' in the discovery context," so Plaintiffs may refuse to provide discovery responses because Lowe's is supposedly refusing to produce a Rule 30(b)(6) witness—repeatedly has been rejected

by courts in the Fourth Circuit. *Estate of Broccolino v. McKesson Corp.*, No. CIV. A. WDQ-05-0438, 2006 WL 5217766, at *2 (D. Md. Feb. 23, 2006) (explaining that "[t]he existence of a discovery dispute as to one matter does not justify withholding other discovery"); *see also Jayne H. Lee*, 173 F.R.D. at 657 (a party "may not retaliate and hold [discovery] hostage" because of alleged deficiency in the opposing party's discovery responses); *Wei-Ping Zeng v. Marshall Univ.*, No. 3:17-CV-03008, 2019 WL 164813, at *4 (S.D.W. Va. Jan. 10, 2019) (plaintiff was "not entitled to receive discovery on a tit-for-tat basis"); *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2008 WL 2414046, at *10 (E.D.N.C. June 13, 2008) (noting that "conditioning one's own production on that by the other party is not, absent unusual circumstances, permitted under the law"). As one decision—which Plaintiffs themselves cite—explained, "[i]t is clear under the text and spirit of the discovery rules that the existence of a discovery dispute as to one matter is not a ground to delay or withhold the taking of other discovery." *Jayne H. Lee, Inc.*, 173 F.R.D. at 657; Mot. at 11 (citing *Jayne H. Lee*). There can be no doubt that Plaintiffs' refusal to answer the opt-in discovery requests is based on this impermissible rationale, as they indicated during the parties' July 13 meet and confer that either ***all*** discovery should be stayed or ***all*** discovery should proceed. Senger Decl. ¶ 16, Ex. 4 at 3.

But the reasons why the Rule 30(b)(6) deposition should be deferred until September do not apply to the discovery that Lowe's has served on the 300 sample opt-ins. While the outcome of the MDL Motion likely will alter the scope of the Rule 30(b)(6) deposition in this case, conversely, the MDL Motion will ***not*** impact the written discovery responses from the 300 opt-in plaintiffs. Those opt-ins must provide written responses to Lowe's discovery requests irrespective of whether *Danford* is centralized in an MDL with the 18 *Danford*-Related Actions. *See* Dkt. 153 at 6; *see also Turner v. BFI Waste Servs., LLC*, 292 F. Supp. 3d 650, 654 (D.S.C. 2017) ("Once a

14

FLSA action has been conditionally certified, opt-in plaintiffs become parties to the FLSA action as a whole."). And the nature of these opt-ins' discovery responses regarding their own, individual timekeeping practices, responsibilities for opening and closing stores, and use of their smartphones for work-related communications will be the same regardless of whether this case becomes part of an MDL. Moreover, to the extent that Plaintiffs' counsel has concerns regarding the random nature of the selection process that resulted in the 300 opt-ins on whom discovery was served, Lowe's has made clear its willingness to provide supporting evidence of that process. *See* Senger Decl. ¶ 13, Ex. 4 at 2. Although Plaintiffs cut short the meet-and-confer process and filed their motion without having reviewed that evidence, it is being provided with this opposition brief. *See* Woods Decl. Likewise, Lowe's has conveyed to Plaintiffs' counsel its willingness to agree to a reasonable extension of the deadline for Plaintiffs to respond to its written discovery requests, in order to allow Plaintiffs' counsel sufficient time to evaluate the selection process. *See* Senger Decl. ¶ 14. Indeed, to the extent that Plaintiffs' counsel prefers to revisit the "random sample" approach to discovery altogether, Lowe's would be open to discussing alternatives—*e.g.*, Lowe's could select 150 opt-ins on whom to serve written discovery, while Plaintiffs could select the other 150 opt-ins. But Plaintiffs' counsel has articulated no viable basis for a blanket protective order, which would prevent the opt-ins from responding to *any* written discovery in this case. There is none.

## CONCLUSION

Because Plaintiffs have attempted to short-circuit the parties' good-faith negotiations and failed to articulate the need to compel a date for the Rule 30(b)(6) deposition or for a protective order with respect to opt-in discovery, the Court should deny their motion.

Dated: July 31, 2020                                         Respectfully submitted,

/s/ Jason C. Schwartz

| | |
|---|---|
| Adam K. Doerr (Bar Number: 37807) | Jason C. Schwartz (admitted pro hac vice) |
| ROBINSON, BRADSHAW & HINSON, P.A. | Molly T. Senger (admitted pro hac vice) |
| 101 N. Tryon St., Ste. 1900 | David A. Schnitzer (admitted pro hac vice) |
| Charlotte, North Carolina 28246 | GIBSON, DUNN & CRUTCHER LLP |
| Telephone: (704) 377-2536 | 1050 Connecticut Avenue, N.W. |
| Facsimile: (704) 378-4000 | Washington, DC 20036 |
| adoerr@robinsonbradshaw.com | Telephone: (202) 955-8500 |
| | Facsimile: (202) 467-0539 |
| | jschwartz@gibsondunn.com |
| | msenger@gibsondunn.com |
| | dschnitzer@gibsondunn.com |

Karl G. Nelson (pro hac vice
  motion forthcoming)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave., Ste. 2100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
knelson@gibsondunn.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ Jason C. Schwartz
*Attorney for Defendants*